## Case No. 12,089.

### ROUSE v. INSURANCE CO.

[3 Wall. Jr., 367;[1] 25 Law Rep. 523; 19 Leg. Int. 396.]

Circuit Court, E. D. Pennsylvania. Nov. Term. 1862.

MARINE INSURANCE — TIME POLICY — SEAWORTHINESS—HOME PORT—FOREIGN PORT.

1. When insurance by a time policy is made on a vessel then in her home port, seaworthiness at the time of the ship's sailing is an implied warranty. though it would not be implied that the vessel was seaworthy at the moment of effecting insurance in case of a time policy made

[1] [Reported by John William Wallace, Esq.. and here reprinted by permission.]

on a vessel, "lost or not lost," in a distant ocean, and of whose situation or condition the owner could know nothing at the moment he was making this insurance.

[Cited in Union Ins. Co. v. Smith, 124 U. S. 427, 8 Sup. Ct. 546.]

2. The distinction between a vessel in her home port, and which, before she sails, the owner has it in his power to render seaworthy, and one in a distant ocean, where neither party can know what her condition is, nor how far the seaworthiness which she had when leaving her home port may have been destroyed or impaired by storms encountered after her departure, and over which the owner may have little or no control, is one which from motives of public policy should be strictly enforced.

3. The present case distinguished from Small v. Gibson, 14 Jur. 368, 15 Jur. 325, 17 Jur. 1131, and 24 Eng. Law Eq. 16; and from Jones v. Insurance Co. [Case No. 7,470].

[Cited in Hoxie v. Pacific Mut. Ins. Co., 7 Allen, 228.]

This was an action on a time policy of insurance upon a vessel lying at the time of the insurance made, in her home port; and by the terms of the policy to be employed as a passenger vessel between New York and Galveston, in Texas.

[The facts, as found by special verdict, were these: The policy, dated the 30th January, 1860, was "on a steamboat named the Commerce, then lying in the port of Baltimore," and by it the defendant agreed to insure the boat, "for one year, commencing on the 27th day of December, 1860, at noon, and ending on the 27th day of December, 1861; the policy to attach on her present voyage from Baltimore to New York." After undergoing some repairs, the boat entered upon her first voyage on the 10th of March, 1860, and foundered at sea off Cape Hatteras, in the Gulf Stream, without undergoing any extraordinary stress of weather, and being unseaworthy when she left the port of New York on the 10th of March, 1860.] [2]

Soon after the date of the policy the vessel entered upon her first voyage, being unseaworthy at the time of leaving port, and foundered at sea a few days afterwards.

These facts having been found by special verdict, the question now was whether this unseaworthiness at the time of leaving port was a material issue in the case; or in other words whether, in a time policy like this, there is an implied warranty that the boat when she shall commence the voyages in which she is to be employed, will be seaworthy.

The case having been submitted (by G. P. Hamilton, for plaintiff, and by Loomis, for defendant), on the authority and arguments of Small v. Gibson and of Jones v. Insurance Co., hereafter mentioned, which cases were considered to embody all that could be said or had been decided on the point, it is necessary here to state the history of the decisions.

[2] [From 25 Law Rep. 523.]

The question, whether there is an implied warranty of seaworthiness in time policies as well as in policies for voyage, was first directly decided in England, in Small v. Gibson (in the court of queen's bench, A. D. 1849) 14 Jur. 368. In that case the policy was on the ship Susan, "lost or not lost, in port and at sea; in all trades and services whatsoever and wheresoever, during the space of twelve calendar months." This case of Small v. Gibson came up on a demurrer to pleas, which do not show under what circumstances the assurance was effected; nor where the ship was when the policy issued (see 24 Eng. Law & Eq. 46, per Lord St. Leonards), though it is assumed in the argument of the case, that she was on her voyage. The court, in the present case, assumes that in the said case of Small v. Gibson, the ship was on a "distant ocean," and that "neither party could know what storms she had encountered after her departure," which fact was probably so; though not one involved in a judgment given on such pleadings. It was declared by the queen's bench, after argument, "that notwithstanding some dicta in Emerigon and other foreign jurists, the opinion of all the lawyers in modern times in England and America, is clear, that there is no difference between a time policy and one for a particular voyage, as to the implied warranty of seaworthiness." On error to the exchequer chamber, this case was again argued and at great length (15 Eng. Law & Eq. 325); and the judgment of that court given by Parke, B., reversing the decision of the queen's bench. The same question came before the circuit court for this circuit, at Philadelphia, in Jones v. Insurance Co. [Case No. 7,470], A. D. 1852; the policy there being on the ship "lost or not lost," and the ship having, as a matter of fact, which was admitted though not on the record, been on a South American voyage. The court there adopted the decision of the exchequer chamber, in Small v. Gibson, as conclusive of the general question. But they remark: "It is true, Small v. Gibson does not decide that there is no warranty of seaworthiness at all in a time policy, or that there is not a warranty that the ship is or shall be seaworthy for that voyage, if the ship be then about to sail on a voyage; or if she be at sea, that she was not seaworthy when the voyage commenced.' This, it will be seen, is the question proposed in this case.

After the case in our circuit was decided, Small v. Gibson was argued before the house of lords (see note to Jones v. Insurance Co. [supra], 17 Jur. 1131, and 24 Eng. Law & Eq. 16); and opinions delivered by seven judges affirming, and two for reversing the judgment of the court of exchequer chamber. Afterwards the lord chancellor (Lord St. Leonards) and Lord Campbell, C. J., delivered their several opinions, concurring with the majority. But the question raised in

this case was not there decided—as it was not necessary to the decision of the case before that court—but it is noticed by both the chancellor and the chief justice; the former saying: "If, however, a ship be about to sail on a particular voyage, and a time policy be effected instead of a voyage policy, I think, as at present advised, that the condition of seaworthiness at the commencement of the voyage would be implied." Lord Campbell, on the contrary, says: "As at present advised, I should decide against the implied condition in all cases of time policies, and should be glad if it were understood that in all voyage policies there is, and in no time policies framed in the usual terms, is there a condition of seaworthiness implied." His lordship thought that any exception to this general rule in time policies would be "gratuitous and judge made;" and that it was "most desirable that in commercial transactions there should be plain rules to go by, without qualification." The point therefore now before the court was a new one, both in England and here.

GRIER, Circuit Justice. As neither the case of Small v. Gibson. 17 Jur. 1131, and 24 Eng. Law & Eq. 16, nor that of Jones v. Insurance Co. [Case No. 7,470], decide that all time policies differ from voyage policies as to the implied warranty, but as each decide, only that the peculiar species of time policies then under consideration (which, as will appear, was the same in both cases), did not come under the rule applicable to voyage policies, it will be necessary to notice more particularly the covenants of those policies, and then examine the reasons given for not subjecting the assured to this implied covenant of warranty. For if the reasons for this exception of the time policies in the cases referred to, do not apply to the form and species of time policy now under consideration, the same rule ought not to apply.

The words of the policy in Small v. Gibson are as follows: "On the good ship or vessel called the Susan, lost or not lost in port and at sea, in all trades and services whatsoever and wheresoever, during the space of twelve calendar months, commencing," &c.

The vessel was on a distant ocean; neither party could know what her condition was; if she had been seaworthy when she left her home port, neither party could know what storms she had encountered after her departure. The very object in affecting the policy is to pay a sum of money or premium for the purpose of casting upon another the perils and chances of the voyage during the period insured. If the ship was in existence at the time the policy was made, and in a storm, which dismantled her and rendered her wholly unnavigable, if she should go to the bottom the next day from leaks sprung before the date of the policy, it was evidently the intent of the parties that the underwriter was paid for taking upon himself the hazard. It

is true a policy may be made on a ship from Calcutta to New York, and the owner may not know whether his vessel is seaworthy or not. But he knows that the master of his vessel will not leave Calcutta without putting his vessel in a condition to meet the usual perils of the voyage, and may well be presumed to warrant that fact with regard to his absent vessels. It is his bounden legal duty towards the mariners for the safety of their lives, and towards the merchants who load their goods, that the ship should be stout, stanch and strong, or in other words, seaworthy, before she commences a voyage either from or to a distant port. And it may most properly be implied, that in this contract with the underwriter the owner should be taken to warrant, as a foundation of the contract, that the ship shall be at the time of sailing from Calcutta, a seaworthy vessel. This rule is founded on policy, also, and courts should enforce strict compliance with it; otherwise the effect of insurance might be to render those who are protected from loss by the policy, exceedingly careless about the condition of the ship, and the consequent safety of the crew. Every vessel at the commencement of each particular voyage, requires appliances commensurate and appropriate to the ordinary risks of navigation during the particular voyage contemplated. In such a case there can be no difficulty in fixing the commencement of the risk, and making proof of the vessel's condition. But it is otherwise in a time policy like that in Small v. Gibson [supra]. where the risk begins to run on a given day, wherever the ship may be. Whether the vessel is seaworthy or not is clearly one of the risks assumed by the underwriter, who has covenanted to bear a part of the risk of the owner for a given period.

The words of the policy in Jones v. Insurance Co. [supra]—the case I mean in our own circuit—were also "lost or not lost," and in point of fact, the vessel was on the main at the time when the assurance was effected.

But there are many policies of insurance which may be classed under the genus time policies, as distinguished from voyage policies, to which this course of reasoning would be wholly inapplicable. Let us take the case before us: It is true, it is a time policy, but it is not on a vessel in a distant ocean, or in parts unknown, where the parties have contracted without a knowledge of her situation, and with a premium paid for assuming the risk of her seaworthiness at the time by the underwriter. It is, in fact, but an agreement to insure the vessel in so many voyages between New York and Galveston, as she may choose to make within a year. If the insurance had been for twelve successive voyages back and forth. it would have been classed as a voyage policy. and the same implied warranty of seaworthiness would have applied to each, as if there had been several policies for each voyage. Can the fact that the number of voyages is indefinite, and

may be more or less than twelve, if within the year, constitute a difference in the essence of the contract, because the accident of its form places it in the general category of a time policy as distinguished from a voyage policy?

Parke, B., in delivering the opinion of the court of exchequer chamber, in Small v. Gibson, after stating the reasons why the implied warranty of seaworthiness, which it is the policy of the law to enforce, did not apply to that peculiar form or species of time policy, is careful to exclude the idea that this same rule would apply to all time policies; and very justly, as the decision in that case first established the doctrine, that any time policy should be held as excepted from the general rule as to seaworthiness.

Martin, B., in his opinion, delivered in the house of lords, says: "If the record in this case had shown that the policy had been effected upon the ship upon her setting out from her original port, I am of opinion that from analogy to the case of a voyage policy, the warranty ought to be implied. If a time policy be effected on a ship about to sail from a given port on a voyage or voyages the ship must, in my opinion, be seaworthy at the time of·sailing."

"Such a condition or warranty," says Platt, B., "is intelligible; its observance is practicable, and would be calculated to extend to the assured and the underwriter respectively every reasonable protection."

Lord Campbell, C. J., admits there might be an exception to the general rule of implied seaworthiness where the time policy is effected on an outward bound ship in a port where the owner resides, but thinks it better to have a short, sharp rule, applying to all time policies—and thinks it more expedient that the rule should remain without any exception.

It seems not to have occurred to that learned judge that the exception to the general rule as to seaworthiness was, itself, a "judge made" one, then for the first time decided, and that to include other cases bearing no analogy to the one before the court (and to which the reasons given would not apply), within that exception, would be "gratuitous," however it might facilitate the business of a court to follow "plain rules" without distinguishing between things that differ.

Judgment for defendant.

---

ROUSE (POST v.).    See Case No. 11,300.

ROUSMANIER (HUNT v.).    See Case No. 6,-897.

ROUSMANIERE (HUNT v.).    See Case No. 6,898.

ROUSMANIERE'S ADM'RS (UNITED STATES v.).    See Case No. 16,200.

ROUSSEAU (FRY v.).    See Case No. 5,141.

ROUSSEAU (WILSON v.).    See Case No. 17,-832.