1. INSURANCE—CONTRACTS—CONSTRUCTION OF SEPARATE PAPERS TOGETHER.

A marine policy consisted of three papers; the first the regulation form of the insurer, bearing the names of the parties, the subscription clause, and date, but the descriptions of the voyage, subjects, and steamers insured were "as per form attached." At this point appeared the more detailed printed form of the agents, containing the usual clauses of a marine policy, which were "substituted for those of the policy to which it is attached." The third, a typewritten paper, was attached to the agents' form in a similar manner, and contained the more intimate agreements by which the policy was molded to the circumstances. Held, that the policy consisted of all three papers, and not the typewritten paper alone.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 309.]

2. EVIDENCE — PAROL EVIDENCE AFFECTING WRITINGS — CONTRACTS OF INSURANCE.

A typewritten paper attached to the agents' form, which was in turn attached to the regulation form of the insurer, provided that lard, greases, tallow, and packing house products of all kinds were insured thereunder, to pay particular average if amounting to 3 per cent., each tierce, barrel, or package separately insured, and that the underwriters agreed to pay for loss in weight in excess of 1 per cent. on the entire shipment; and by another clause it was agreed to insure by land as well as by water. On the agents' printed form appeared a clause "touching the adventures and perils which the said assurers are content to bear," and enumerating risks characterized as "perils of the sea"; but the policy contained no limitation as to land risks. Held, that there was such an ambiguity as to the application of the agreement to pay for loss in weight in excess of 1 per cent. as to entitle those insured to show by parol evidence that in the shipment of commodities, similar to those insured, it was customary to expect a small loss in weight under 1 per cent. due to leakage and the wear and tear of the voyage, and that in order to protect themselves from such loss in excess of that amount they required the clause in question to be inserted.

3. INSURANCE—ACTIONS ON POLICY—COMPLAINT—SUFFICIENCY.

That goods were warranted by insured free from claim on account of capture, seizure, detention, or destruction by any belligerent nation, or by or from any officer or other person claiming to act in their name, does not require that any of those facts should be negatively set out in a com-

plaint on the policy; but they are grounds of defense solely, to be pleaded by the insurer.

Action by Emanuel S. Kuh and others against the British America Assurance Company. On demurrer to complaint. Demurrer overruled.

Stanley H. Molleson, for plaintiffs.
Horace L. Cheyney, for defendant.

GOFF, J. The complaint to which this demurrer is interposed is founded upon a policy of marine insurance, issued to plaintiffs by the British America Assurance Company, of Toronto, Canada, through Mather & Co., their Philadelphia agents. This is an "open" policy, and in broad terms purports to insure plaintiffs against loss on any shipments of lard, greases, tallow, etc., which may be made in accordance with the terms of the instrument. The policy consists of three papers. The first, which acts as back, is the regulation form of the British America Assurance Company. It bears the name of the parties, but the descriptions of the voyage, subjects, and steamers insured are "as per form attached." At this point appears the more detailed printed form of the agents. This contains the usual clauses of a marine policy, which are "substituted for those of the policy to which it is attached." Of the original policy, then, there remains nothing save the heading, subscription clause, and date. The third, a typewritten paper, is attached to the agent's form in a similar manner; and in it are to be found the more intimate agreements by which the policy is molded to the circumstances. It contains the clause upon which this dispute rests. It is this:

"Lard, greases, tallow, and packing house products of all kinds are insured hereunder—to pay particular average if amounting to 3 per cent., each tierce, barrel, or package separately insured. The original sworn weights at place of shipment to be taken as basis of settlement, and underwriters agree to pay for loss in weight in excess of 1 per cent. on the entire shipment."

Fifty-two of the 69 causes of action are demurred to for the reason that they allege a certain loss in weight in excess of 1 per cent. on the entire shipment, without specifying by what that loss was produced. The contention of plaintiffs is that the typewritten page alone constitutes the policy; and, since it contains no clause enumerating the perils insured against, it was the intention to insure against all loss in excess of 1 per cent., however occasioned.

The contention that agent's printed form is no part of the policy cannot be sustained. The typewritten sheet by itself lacks many clauses which are customary in every English policy of this character. Alone it is obviously inadequate as a complete expression of the intentions of both parties to the contract. It wants, not only the subscription and date, but also the perils insured against and the other provisions contained in the printed form. That such an interpretation would be contrary to all the established rules of construction is shown by the following authorities:

"Effect is to be given, if possible, to all parts of a policy, both printed and written. No part of the policy is to be rejected as insensible or inoperative, if a rational or intelligent meaning can be given to it, consistent with the gen-

eral design and object of the whole instrument." 16 Am. & Eng. Ency. of Law, 864; Chadsey v. Guion, 97 N. Y. 333.

The policy must be taken to consist of all three papers, with the exception of the terms and conditions printed upon the original policy of the British America Assurance Company, which are expressly waived. If any written provision is found to be inconsistent with the printed form, the former will control in accordance with familiar principles of construction. Further than this, no discussion as to what constitutes the policy should be required. A careful examination of the terms of the entire instrument reveals a somewhat anomalous position, if defendant's view be adopted. The clause immediately preceding the one already quoted from the typewritten page is as follows:

"It is expressly understood and agreed that this assurance attaches from the moment the goods leave packing house, factory, store, or warehouse at initial points of shipment in the interior and (or the seaboard of the United States and) or Canada or from the moment they become at the risk of the assured after leaving initial points of shipment, and in all cases after attachment this insurance to remain in force thereafter continuously until the goods are delivered at store, warehouse or factory of consignee at final place of destination."

By this clause defendant, in no vague terms, agrees to insure plaintiffs as well for transportation by land as by water. Such an intention is also shown in other provisions of the same paper:

"To cover all shipments, as herein provided, made on and after June 22, 1905, including shipments on which the interior and (or dock risk attaches prior to June 22, 1905, provided the ocean vessels carrying them forward do not sail prior to June 22, 1905." "Per steamer or steamers and) or other conveyances."

In view of this agreement to insure by whatever conveyance the goods are carried, it is but natural to expect a clause detailing the perils insured against, whether on land or sea; and it is clearly a requisite to a complete agreement between the parties that the policy state the amount of liability on all risks undertaken. Neither of these things does it do, according to defendant. On the agent's printed form appeared a clause:

"Touching the adventures and perils which the said assurers are contented to bear."

This contains some 15 or more marine risks which defendant inaccurately characterizes as "perils of the sea," but in vain is the policy searched for any limitation as to land risks. From the passages already quoted this inconsistency presents itself: That, although defendant specifically agrees to insure against loss during transportation by land, yet there is no mention of the land risks which they are "contented to bear," nor is there any clause by which their liability for such risks is in any degree limited, unless it be read into one of the general provisions. The agreement to pay particular average, if amounting to 3 per cent, can in no wise apply, for the word "average," as used in this connection, is merely a symbol, adopted by custom for historical reasons (see 2 Arnold's Marine Insurance [6th Ed.] 919 et seq.), and means nothing more than marine loss. This leaves but the provision that:

"Underwriters agree to pay for loss in weight in excess of 1 per cent. on the entire shipment."

Unless this can be construed to cover land, as well as marine risks, the British America Assurance Company must be held for all loss by land, no matter how occasioned, and to any amount, for it will have undertaken such assurance without providing a single limitation for its own protection. Such a view is not in accord with custom, although it is the logical outcome of defendant's reasoning. It contends that a loss over 1 per cent. may not be pleaded, unless it be alleged that the loss was occasioned by one of the perils enumerated in the policy which defendant itself characterizes as "perils of the sea." The force of this argument is to limit the application of the 1 per cent. clause to marine risks, in which case it would be but supplementary to the 3 per cent. clause. The tenor of the policy and the general words employed in the passage under discussion do not lead to such a conclusion. A second possible view is that the 1 per cent. clause applies only to loss incurred during transportation by land. The broad terms used at once negative such an interpretation; and, as this theory is not advanced by either party, it may be abandoned. The only remaining construction is that it applies to transportation of any description. If that is so, can it be seriously urged that plaintiff is restricted to the limited number of risks enumerated in the policy and bound to plead them, or that, if the loss occurs at sea, he must plead them, but otherwise if the loss be upon the land?

The plaintiffs' own contention is more in accord with the tenor of the instrument upon which they sue. It is that, in the shipment of commodities, similar to those insured, which are of a perishable nature, it is customary to expect a small loss in weight, under 1 per cent., due to leakage and the wear and tear of the voyage. It is alleged that, in order to protect themselves from such loss in excess of that amount, plaintiffs required that the clause in question be inserted. This is a reasonable interpretation, and to support it plaintiffs should be allowed to introduce parol evidence. "Parol evidence is always admissible, when doubt arises upon the face of an instrument either as to its meaning as a whole, or as to the meaning of any particular words used in it—not for the purpose of enabling the court 'to hear what the parties said,' but to enable it to understand what they wrote, as they understood it at the time." McIntosh v. Miner, 53 App. Div. 240, 245, 65 N. Y. Supp. 735. See, also, S. M. Hamilton Coal Co. v. New York & Philadelphia Coal & Coke Company (recently decided in the United States Circuit Court of Appeals, Second Circuit) 160 Fed. 75. The fact that the goods were "warranted by the assured free from claim on account of capture, seizure, detention, or destruction, by or arising from any belligerent nation, or by or from any officer, civil or military, or other person claiming to act in their name or under their authority, or in their behalf" does not require that any of those facts should be negatively set out in the complaint. They are grounds of defense, solely, to be pleaded by defendant as occasion requires. 11 Ency. of Pl. & Pr. 414, note 1.

As there is but a demurrer to the complaint before the court, the question of the intention of the parties may not be entered into at this

time. It is sufficient that an ambiguity is presented on the·face of the complaint, of which the policy is made a part; and for that reason, if for no other, the demurrer must be overruled, with costs to the plaintiffs.

Demurrer overruled, with costs.