of every accident, and that immediately after the accident he did make an investigation and report. He did not see the accident, and it does not appear that he knew how it occurred, or that he had any knowledge of the true cause of the injury, except through a presumption flowing from the fact that he made an investigation.

I do not think the notice in the case at bar presents merely an inaccuracy which can be overcome by proof of no intention to mislead, and that the defendant was not misled (Hughes v. Russell, supra), but rather that the case presented is within the principle decided in Finnigan v. N. Y. Contracting Co., supra, and Glynn v. N. Y. C. & H. R. R. R. Co., supra. There can be no question but that there must be some evidence that the defendant had actual knowledge of the true cause of the injury, and that there was no intention on the part of the plaintiff, in the wording of his notice, to mislead. There is no such evidence in the record before us. This error does not, however, require a reversal, as the plaintiff made out a cause of action under the first subdivision of his complaint, upon defendant's common-law liability. This cause of action did not rest upon the negligence of plaintiff's fellow servant Stewart, who started the crane, but is predicated upon the proposition that the defendant was negligent because of its failure to discharge its legal duty and obligation to use due care in providing him with a safe place in which to do his work, and in failing to provide reasonable safeguards. The jury were charged that they could not find a verdict for the plaintiff based simply upon the fact that Stewart was careless in moving the crane, but that before such a verdict was warranted they must find from the evidence that the place furnished by the defendant to the plaintiff to do his work was unsafe in fact, and that the negligence of the defendant made it so.

The jury have resolved the questions in favor of the plaintiff, and the judgment and order must be affirmed, with costs.

---

### KUH et al. v. BRITISH AMERICA ASSUR. CO.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

INSURANCE (§ 471*)—CONTRACT—CONSTRUCTION—MARINE INSURANCE—RISKS.

The printed part of a marine policy set forth the risks insured against, and provided that no particular average should be paid unless amounting to 5 per cent. A typewritten rider stated the goods insured, and that the insurer would pay particular average if amounting to 3 per cent., each package to be separately insured, the original sworn weights to be taken as a basis of settlement, and insurer to pay for loss of weight in excess of 1 per cent. on the entire shipment. *Held*, that the insurer was liable for damages amounting to 3 per cent. on each package, and, if there was loss of weight in excess of 1 per cent. on the entire shipment, the insurer was liable for that, whether the loss for any particular package were 3 per cent. or not, but the liability for the 1 per cent. loss was only for the particular risks insured against and was not absolute, irrespective of the cause of the loss.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 471.*]

Appeal from Special Term, New York County.

---

Action by Emanuel S. Kuh and others against the British America Assurance Company. A demurrer to the complaint was overruled (59 Misc. Rep. 589, 112 N. Y. Supp. 410), and defendant appeals. Reversed, and demurrer sustained, with leave to serve an amended complaint.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Horace L. Cheyney, for appellant.

Stanley Holcomb Molleson, for respondents.

McLAUGHLIN, J. Appeal by the defendant from an interlocutory judgment overruling its demurrer to each of the first 52 causes of action alleged in the complaint. The same issue of law was presented in each case, and the record before us contains the first alleged cause of action only, the parties having stipulated that the decision upon the demurrer to this cause of action shall be final and binding as to the remaining 51.

The action is to recover upon an open policy of marine insurance issued by the defendant, covering shipments of lard, grease, tallow, and packing-house products. The first cause of action alleges the issuance of the policy, which is made a part of the complaint, and that by its terms the defendant agreed, as to each shipment insured thereunder, to pay for all loss of weight in excess of 1 per cent. of the entire shipment, irrespective of the cause of such loss; and that such a loss of weight was sustained by a shipment of tallow, covered by the policy, from New York to Marseille by the steamship "Madonna," the damage by reason of such excess loss of weight being $101.75. These are the only allegations of the complaint which it is necessary to consider on this appeal. The demurrer was upon the ground that the facts stated are not sufficient to constitute a cause of action. The defendant contends that it is liable only for loss resulting from the causes specified in the policy, and that, since it is not alleged that the loss in question was occasioned by one of these causes (the complaint containing no allegation whatever as to the cause of the loss), no cause of action is stated.

The question presented turns upon the construction of the policy. This consists of a printed form issued by the defendant, containing general provisions, upon the face of which is attached the printed form of the agents who issued the policy, and which is made a part thereof, and to the latter is attached a further typewritten sheet or rider, also made a part of the policy. In the general form of the policy it is stated that:

"Touching the adventures and perils which the said Insurance Company is contented to bear and take upon itself, they are of the Rivers, Seas, Bays, Sounds, Canals, Railroads, Fires and any and all the risks of Fire and Navigation and Transportation and all other perils or misfortunes that have or shall come to the hurt, detriment or damage of the said property or any part thereof"—excepting certain perils which are specified.

The printed form of the agents contains a somewhat similar provision, viz.:

"Touching the adventures and perils which the said assurers are contented to bear and take upon themselves in this voyage, they are of the seas, men-

of-war, fires, enemies, pirates, rovers, thieves, jettisons, letters of mark and countermark, reprisals, takings at sea, restraints and detainments of all kings, princes or people of what nation, condition or quality soever, barratry of the master and mariners, and all other perils, losses and misfortunes, that have or shall come to the hurt, detriment or damage of the said goods and merchandise, or any part thereof."

This form specifies in detail the subject and conditions of the insurance, and provides, among other things, that "no partial loss or particular average shall in any case be paid unless amounting to five per cent." Upon the typewritten rider are further details, and the following clause, which gives rise to the present controversy:

"Lard, greases, tallow and packing-house products of all kinds are insured hereunder—To pay particular average if amounting to three per cent., each tierce, barrel or package separately insured. The original sworn weights at place of shipment to be taken as basis of settlement, and underwriters agree to pay for loss in weight in excess of one per cent. on the entire shipment."

The plaintiffs contend that under the clause, "and underwriters agree to pay for loss in weight in excess of one per cent. on the entire shipment," the defendant is obligated to pay for all loss of weight exceeding 1 per cent. on the entire shipment, irrespective of the cause of the same. I am unable to accept this view. It is not disputed that the insurance was generally against specified risks, which may be characterized as marine risks. Under the printed form of the agents, the company was not liable for a partial loss unless it amounted to 5 per cent. By a paragraph in the typewritten rider, above quoted, this liability was extended, the defendant being bound "to pay particular average if amounting to three per cent." instead of 5 per cent., each tierce being separately insured. It is not, and cannot seriously be, disputed that this liability was limited to the particular risks insured against, but it is urged that the agreement, "to pay for loss in weight in excess of one per cent.," is absolute and not limited to these risks. It is true that the words "particular average" are not repeated, but this clause must be construed in the light of what immediately precedes it, and when so construed the meaning is clear. The defendant was liable for damages amounting to 3 per cent. on each tierce or package—original sworn weights to be the basis of settlement—and if there were loss of weight in excess of 1 per cent. on the entire shipment, whether the loss for any particular tierce or package were 3 per cent. or not, then the defendant was liable for such loss. There is no suggestion in the policy, the printed form of the agents, or the typewritten rider that defendant's liability for such loss was any more extensive and included any other risks than for the 3 per cent. loss, unless the last sentence in the quotation from the rider be destroyed by taking therefrom the words, "and underwriters agree to pay for loss in weight in excess of one per cent. on the entire shipment." Obviously the first part of this sentence, "the original sworn weights at place of shipment to be taken as basis of settlement," applies to what has preceded; that is, "to pay particular average if amounting to three per cent." This sentence cannot be thus mutilated, and if it be urged that there is no necessity for so doing in order to sustain the plaintiffs' claim, then a construction must be given to the whole sen-

tence which would permit a recovery thereunder, where there could be none if all the tierces or packages were damaged more than 3 per cent. It would be entirely unwarrantable to hold that the last half of the last sentence in the paragraph has such an extensive meaning, and one so at variance with the rest of the paragraph and the whole policy, when it can naturally and logically be construed otherwise.

The paragraph immediately preceding the one under consideration provided that the insurance should attach from the moment the goods left the packing house or factory at the initial point of shipment, whether in the interior or on the seaboard, and remain in force until they were finally delivered at the place of destination. The learned justice at Special Term was of the opinion that since the goods were insured during transportation by land as well as by water, and there were no other provisions in the policy defining or limiting the liability of the defendant for what he termed "land risks," the 1 per cent. clause applied to both land and marine risks, and bound the defendant absolutely to pay a loss exceeding 1 per cent., no matter how caused. It is true that the perils of transportation by land insured against are nowhere defined or limited, but if it were intended to make this clause the only provision applying to both classes of risks, it is inconceivable that it should have been placed in the middle of a sentence, at the end of a paragraph which obviously refers to an entirely different subject. What land risks were covered by the policy it is unnecessary to consider, as the loss alleged did not occur while the goods were being transported by land.

I am of the opinion, for the reasons stated, that the interlocutory judgment should be reversed, with costs, and the demurrer sustained, with costs, with leave to plaintiffs to serve an amended complaint, upon payment of the costs in this court and in the court below.

INGRAHAM, CLARKE, and HOUGHTON, JJ., concur. PATTERSON, P. J., concurs in result.