### NEW YORK & P. R. S. S. CO. v. ÆTNA INS. CO.

(Circuit Court of Appeals, Second Circuit. March 10, 1913.)

#### No. 116.

1. INSURANCE (§ 150*)—CONSTRUCTION OF CONTRACT—EFFECT OF RIDER.

The effect of a rider, attached by the insurer to a marine insurance policy, containing a clause that "the terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived," is to displace all the terms of the policy, leaving only the formal parts, and substitute those of the rider, and the insurer cannot invoke, as a defense to an action thereon, a limitation contained in the policy, but not in the rider.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 305–307; Dec. Dig. § 150.]

2. INSURANCE (§ 403*)—MARINE INSURANCE—LOSS THROUGH PERIL OF THE SEAS.

The breaking of the propeller blades of an ocean steamer on a voyage is a loss through perils of the seas, within the terms of a marine policy, where it is shown that the propeller was new, and no latent defects were found therein.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1091; Dec. Dig. § 403.

Marine insurance, perils of the sea, see note to The Dunbritton, 19 C. C. A. 465.]

3. INSURANCE (§ 416*)—MARINE INSURANCE—ACTION ON POLICY—DEFENSES.
　　Conceding that it is the American rule that if a vessel is in a port where repairs may be made, and through negligence they are not made, an insurer cannot be held liable for loss resulting therefrom, it was not such negligence as to relieve an insurer from liability for a steamship to leave port on her return voyage with two of her four propeller blades broken off at half their length, when she had safely navigated for 15 days on her outward voyage in the same condition, and the loss was caused by the stripping off of all the blades by some unknown agency.

　　[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1112, 1113; Dec. Dig. § 416.*]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit in admiralty by the New York & Porto Rico Steamship Company against the Ætna Insurance Company. Decree for libelant, and respondent appeals. Affirmed.

For opinion below, see, 192 Fed. 212.

Foley & Martin, of New York City (J. F. Foley and F. A. Spencer, Jr., both of New York City, of counsel), for appellant.

Burlingham, Montgomery & Beecher, of New York City (Everett Masten, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. The libelant, which operates the steamer Santurce for its own account and risk, except of total loss, took out insurance with the respondent, covering the interest of the owner and of itself as charterer of the steamer, for one year from June 2, 1904, to cover risks in the policy mentioned. December 11, 1904, the steamer sailed from New York to ports in Porto Rico. She was then entirely seaworthy. Her propeller was new and she had a spare one on board. On the voyage the increased speed of the engines indicated that something had happened to the propeller. Thereupon the pressure on the intermediate cylinder was reduced, and the steamer proceeded well. At the port of Guanica the vessel was tipped so that it was ascertained that two consecutive blades, each five feet in length, had been broken about half off. On the return voyage the propeller worked well for 2½ days, when the engines speeded up again, and, as was afterwards discovered, the two whole blades and the remainder of the broken blades were stripped off. The vessel had to be helped into Nassau by the steamer Rosewood and her spare propeller there fitted in place. May 29, 1905, the libelant paid a decree rendered against it in the District Court for salvage awarded to the owners of the Rosewood in the sum of $10,000. In September, 1905, a general average adjustment was made of the salvage and expenses, the proportion of which due by the respondent was $960.49. May 18, 1910, the libel was filed in this case to recover this sum.

The respondent relies on two express covenants in the body of the policy, namely:

"It is agreed that all claims under this policy shall be void unless prosecuted within two years from the date of the happening of the loss."

"It is warranted by the insured seaworthy at her departure on the pres-

ent voyage, and at the commencement of each passage during the continuance of this policy."

[1] The policy sued upon was delivered by the respondent's agent at Boston, and was the usual printed form of the defendant company, executed by its officers; but upon it was pasted a rider, countersigned by the agent, which contained the following clause:

"The terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached; the latter being hereby waived."

Judge Hand correctly held that the rider displaced all the terms of the policy, and not merely those which were inconsistent with its own terms. There was nothing left of the original form except the opening clause:

"Ætna Insurance Company, Hartford, Connecticut, by this policy of insurance do make insurance and cause the United States & Porto Rico Navigation Company, as owners, and Porto Rico Steamship Company, as charterers"

—and the subscription clause, duly executed by the officers of the company:

"In witness whereof, the said Ætna Insurance Company has caused this policy to be signed by its president, and attested by its secretary, at its office in the city of Hartford, and state of Connecticut, and this policy is made and accepted upon the above expressed conditions, but shall not be valid unless countersigned by the duly authorized agent of the company at Boston, Mass.                                        Wm. K. Clark, President.
                                        "Henry E. King, Secretary."

The same view was taken of a rider in Kuh v. British American Insurance Co., 59 Misc. Rep. 589, 112 N. Y. Supp. 410; Id., 130 App. Div. 38, 114 N. Y. Supp. 268; Id., 195 N. Y. 571, 88 N. E. 1122. It follows that the restriction of the right to sue to a period within two years of the date of the loss contained in the body policy does not apply and is no defense. For the same reason the express warranty of seaworthiness at the commencement of each passage must be disregarded.

[2] The next defense is that the libelant has not shown that the loss was covered by the policy. The propeller was new, and no latent defects were discovered in the metal of the blades to explain the accident. The fact that two consecutive blades were broken on the outward voyage, when there is no evidence of racing, indicates strongly that the propeller must have struck some submerged object; likewise the fact that the two remaining blades and the halves that were left of the two broken blades were stripped off at the same time on the return voyage seems to indicate the same thing. Such an accident would clearly be a peril of the seas within the policy. Racing of propellers is too common to be regarded as dangerous. Hundreds of light vessels come to this country every year on voyages during which their propellers race most of the time. If the blades may be broken off under these circumstances in heavy seas, the damage must be regarded as a peril of the sea. The libelant sustained the burden of bringing the loss within the perils insured against.

But if it were to be held that the breaking of the propeller blades on

the return voyage was proximately caused by the negligence of the master, either in not fitting the spare propeller at Porto Rico or in not there loading 6,000 bags of sugar so as to submerge the propeller deeper, as recommended by the surveyors at Mayaguez, the respondent is liable under the Inch-Maree clause contained in the rider which reads:

"This insurance also to cover subject to the special terms of this policy, loss of and/or damage to hull or machinery through the negligence of master, mariners, engineers, or pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the machinery or hull, provided such loss or damage has not resulted from want of due diligence by the owners of the vessel, or any of them, or by the manager."

[3] Finally, respondent insists that it is discharged because the implied warranty of seaworthiness was broken by the condition the vessel was in on leaving San Juan on her return voyage. The breach of warranty of seaworthiness avoids a policy. The law in England seems to be very clear that there is no implied warranty of seaworthiness in the case of time policies. Gow on Marine Insurance, 272. On the other hand, our courts seem to take the view that although there may be no implied warranty of seaworthiness, still if the vessel is in a port where repairs may be made, or equipment and supplies obtained, the insured cannot recover for any loss caused by the want of due diligence in making repairs and obtaining equipment or supplies. Capen v. Washington Ins. Co., 12 Cush. (Mass.) 517; Hoxie v. Insurance Co., 7 Allen (Mass.) 211; Rouse v. Insurance Co., 3 Wall. Jr. 367, Fed. Cas. No. 12,089; Mr. Justice Blatchford in Union Insurance Co. v. Smith, 124 U. S. 405, 427, 8 Sup. Ct. 534, 31 L. Ed. 497, seems to have assumed that there is an implied warranty at the beginning of the risk under a time policy. The observation was not necessary to the decision of the case, because the policy under consideration contained an express exception of losses caused by unseaworthiness. As to losses subsequently occurring, he held that want of ordinary prudence or diligence in keeping the vessel seaworthy would relieve the underwriters, not absolutely, but only of liability for damage caused by such negligence. See the cases collected in 26 Cyc. 645.

The steamer was concededly seaworthy when she left New York, and we do not think she was unseaworthy when she sailed from San Juan on her return voyage. The burden of proving unseaworthiness is, in the federal courts, upon the underwriters. We find no lack of due diligence in the master in proceeding on the voyage in her then condition. His experience seems to have justified it. The first two blades of the propeller were broken December 15th, and after reducing the pressure in the intermediate cylinder the steamer ran at her usual speed to San Juan, arriving December 17th. From there she proceeded without any trouble to Jobos, Ponce, Mayaguez, Guanica, back to Jobos, and San Juan, leaving on her return voyage December 28th, and not breaking the rest of the blades until December 31st. It is the object of insurance to protect owners, among other things, against the negligence of their servants. We do not discover, under Insurance Company v. Smith, such lack of diligence in the master as would discharge the respondent from liability.

The decree is affirmed, with interest and costs.