CHARLES A. PLUMMER

*vs.*

INSURANCE COMPANY OF NORTH AMERICA.

Cumberland.    Opinion November 8, 1915.

*Marine Insurance Policy.    Premium.    Rider.    Seaworthiness.*
*Waiver.                                    Warranty.*

This action of assumpsit is brought upon a policy of marine insurance, whereby the steam yacht Navis of plaintiff was insured by defendant for the period of one year from the date of the policy, for the recovery of the loss or damage suffered by plaintiff by reason of the yacht filling with water while moored in the harbor of Portland, on the nineteenth day of June, 1909. The policy was issued by defendant on the twentieth day of October, 1908. On this day the plaintiff was sole owner of the yacht, which was then lying in the Port of Portland, and continued to be its sole owner until after the filling of the yacht on the day stated. To the policy was attached a rider at the end of which it is provided that "the terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached; the latter being hereby waived."

*Held:*

1. Where a "rider" is attached to a policy of marine insurance in the usual printed form which, being executed by the insurer, contains merely the name of the person and vessel insured and the amount of insurance, and the rider provides that the terms and conditions of the rider are to be substituted for those of the policy and that the latter are waived, the terms and conditions of the rider constitute the contract.

Excepting where the vessel is at sea at the inception of the risk, there is an implied warranty of seaworthiness in time policies of marine insurance.

2. The technical warranty of seaworthiness is satisfied, as a condition precedent, if at the inception of the risk the vessel be staunch, strong, tight and properly equipped and provided to meet the ordinary perils of the adventure in contemplation.

3. Whether a policy be for a voyage or period of time, the construction of the warranty of seaworthiness is the same as to compliance being a

condition precedent at the outset, and as to non-compliance at intermediate stages of the risk.

4. Where the policy has once attached the obligation still rests upon the assured to keep the vessel seaworthy, if practicable, so far as it depends upon himself.

5. The obligation of the assured, after the policy has once attached, to make his vessel seaworthy, as far as practicable, at each stage of the voyage, is not a technical warranty, the breach of which will wholly terminate the policy, but merely a duty, the failure of which will discharge the underwriter from any loss arising from such want of repair.

6. Where a policy has once attached and the risk is entire, there can be no recovery of the premium paid in the event that the insurer is found not liable on the policy.

On report. Judgment for defendant.

This is an action of assumpsit on a policy of marine insurance issued by the defendant to plaintiff on the 20th day of October, A. D. 1908, in which it insured the steam yacht Navis against certain perils therein stipulated, for the period of one year. The plaintiff, at time of the issuance of said policy and at time of damage thereto, was the sole owner of said steam yacht and said policy was in full force. To this policy was attached a so called rider, the terms and conditions of which are to be regarded as substituted for those of the policy to which it is attached, the latter being thereby waived. The yacht, by the terms of the policy, was to be laid up from November 1 to May 1 following, without return of premiums during the period.

Plea, the general issue and brief statement. At the conclusion of the evidence, the case was reported to the Law Court, and upon the evidence so far as competent and admissible, to render such judgment as law and justice require; and if judgment is for the plaintiff, the action is to be referred to the Honorable George E. Bird to assess the damages.

The case is stated in the opinion.

*Guy H. Sturgis, Gurney, Sturgis & Chaplin, and Connellan & Connellan,* for plaintiff.

*Blodgett, Jones, Burnham &·Bingham, and Benjamin Thompson,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

BIRD, J. This action of assumpsit is brought upon a policy of marine insurance, whereby the steam yacht Navis of plaintiff was insured by defendant for the period of one year from the date of the policy, for the recovery of the loss or damage suffered by plaintiff by reason of the yacht filling with water while moored in the harbor of Portland, on the nineteenth day of June, 1909. The policy was issued by defendant on the twentieth day of October, 1908. On this day the plaintiff was sole owner of the yacht which was then lying in the port of Portland and continued to be its sole owner until after the filling of the yacht on the day stated. To the policy was attached a rider at the end of which it is provided that "the terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached; the latter being hereby waived."

The case is reported to this court upon evidence and admissions, so far as the same are competent and admissible, such judgment to be rendered as law and justice require; the damages, if judgment be for plaintiff, to be assessed by a referee.

It is agreed or admitted "that the above policy was in full force and effect at the time said yacht filled, as set out in the plaintiff's writ and declaration; and for the better understanding of the contract, the original policy may be produced at the argument by either party.

"The premium provided for in said policy was duly paid by the plaintiff to the defendant, and said yacht was at all times confined to the waters stipulated therein; and from November, 1908, to May 1, 1909, she was laid up and out of commission.

"In the fall of 1908, when said yacht went out of commission, she was put on a cradle and hauled up into the yard of Joseph T. Davidson, a yacht-builder, on the South Portland side of Portland Harbor, and then certain of her furnishings were removed, and the yacht was covered up for the winter; and she so remained until some time early in June, 1909, when the plaintiff gave said Davidson orders to do certain work upon the yacht, and then launch her and tow her to the plaintiff's mooring, which was located nearly abreast of Union Wharf on the South Portland side of Portland Harbor, which is the inner or upper part of Portland Harbor, and the general location for the anchorage of yachts and small boats.

"The yacht was launched by Davidson in the evening of June 16th, and towed to the plaintiff's mooring, where she remained until the morning of June 19th, when she was observed to be partially full of water.

"The weather between the time of the launching on the evening of June 16th, and the morning of June 19th was ordinary summer weather, and the water at the place where the yacht was moored was smooth; and during that time the yacht's machinery, and piping, were not connected up, but remained just as they were on the evening of June 16th, when she was launched. The yacht while lying at the plaintiff's mooring did not have any one on board, and she did not have any pump aboard that could be used in pumping her out; and no efforts were made to pump her out after she was placed at the mooring until the morning of June 19th, when she was pumped out by the steam-tug Startle.

"In consequence of the filling, the plaintiff suffered damage far in excess of the sum of $25.00 mentioned in the policy, and he gave prompt notice to the defendant company of the filling of said yacht, and the damages thereby occasioned, but the defendant immediately denied all liability for the loss and damage thus sustained."

The terms and conditions of the contract of the parties must be drawn from the rider which, by the terms of the latter, was substituted for the policy. The rider and it alone became the contract. *New York etc., Co.* v. *Aetna Ins. Co.,* 204 Fed., 255, 257 and cases cited.

Ordinarily seaworthiness at the inception of a risk is presumed, but where a vessel without being subjected to any stress of weather, or to any unusual buffeting of the seas or other extraordinary peril founders the burden of showing seaworthiness is cast upon the assured; *Treat* v. *Un. Ins. Co.,* 56 Maine, 231; *Dodge* v. *Ins. Co.,* 85 Maine, 215; *Hutchins* v. *Ford,* 82 Maine, 363, 370; *Starbuck* v. *Ins. Co.,* 54 N. Y. Supp., 293. It is, however, unnecessary to consider in this case where the burden lies or whether the plaintiff has met the burden, since it is apparent that there is no serious question between the parties that the taking of water by the yacht, while at her moorings and in smooth water, followed to a failure to close a sea cock or sea cocks, the inboard and outboard ends of which were below the water line and which had been opened when the vessel

.was laid up the preceding fall, when the plaintiff and Davidson entered into the verbal arrangement for the hauling out of the yacht in the fall and her launching in the following spring.

It is undoubtedly the law of England that in time policies of marine insurance there is no implied warranty whatever of seaworthiness. *Gilson* v. *Small,* 4 H. L. C., (1853) 353; *Thompson* v. *Hopper,* 6 El. & Bl., (1856) 172, 177; *Fawcus* v. *Sarsfield,* 6 El. & Bl., (1856) 192; *Dudgeon* v. *Pembroke,* App. Cases, 1876-7, 284. In the United States the great weight of authority is to the effect that, except in cases when at the inception of the risk the vessel is at sea, there is an implied warranty of seaworthiness in time policies. *Capen* v. *Washington Mut. Ins. Co.,* 12 Cush., (1853) 517; *Rouse* v. *Ins. Co.,* 3 Wall Tr., (1862) Fed. Cas. No. 12,089; *Hoxie* v. *Home Ins. Co.,* 32 Conn., (1864) 21; *American Ins. Co.* v. *Ogden,* 20 Wend., (1838) 287; see also *Pope* v. *Swiss Lloyd Ins. Co.,* 4 Ind., 153, 154. See, however, *Merchants' Ins. Co.* v. *Morrison,* 62 Ill., 242, 93 Am. Rep., 93.

The technical warranty of seaworthiness is satisfied as a condition precedent, if at the inception of the risk the vessel be staunch, strong, tight and properly equipped and provided to meet the ordinary perils of the adventure in contemplation. The Edwin I. Morrison, 153, U. S., 199, 210; The Caledonia, 157 U. S., 124, 134; The Irawaddy, 171 U. S., 187, 190; The Southwark, 191 U. S., 1, 5-6; *Hoxie* v. *Pac. Mut. Ins. Co.,* 7 Allen, 211, 224; The Silvia, 171 U. S., 462, 464.

Speaking of the implied warranty of seaworthiness, it is said in The Caledonia, 157 U. S., 124, 134; "As the same warranty implied in respect of policies of insurance exists in respect of contracts of affreightment, that warranty is necessarily as absolute in the one instance as in the other.

"In *Putnam* v. *Wood,* 3 Mass., 481, 485, the Supreme Court of Massachusetts, speaking through Parker, J., said: 'It is the duty of the owner of a ship, when he charters her or puts her up for freight, to see that she is in a suitable condition to transport her cargo in safety; and he is to keep her in that condition, unless prevented by the perils of the sea or unavoidable accident. If the goods are lost by reason of any defect in the vessel, whether latent or visible, known or unknown, the owner is answerable to the

freighter, upon the principle that he tacitly contracts that his vessel shall be fit for the use for which he thus employs her. This principle governs, not only in charter parties and in policies of insurance; but it is equally applicable in contracts of affreightment.' "

And upon the same subject, Mr. Phillips declares, "Whether a policy is for a voyage or period of time, the construction of this warranty is the same as to compliance being a condition precedent at the outset, and as to non compliance at intermediate stages of the risk." I Phil. Ins. (4th Ed.) § 729 (See also *Dixon* v. *Sadler,* 5 M. & W., (1839) 405, 415; *Sadler* v. *Dixon,* 8 Id., (1841) 894, 898; *Copeland* v. *N. E. Mar. Ins. Co.,* 2 Met., 438, 444); II Arn. Ins. (11th Ed.) § 695. "After the policy has once attached, a compliance with this warranty ceases to be a condition precedent to the liability of the insurers for any loss." I Phil. Ins. § 730. "The obligation still rests upon the assured to keep the vessel seaworthy if it be practicable, so far as it depends on himself." Id. § 731; . see also *Morse* v. *Ins. Co.,* 122 Fed., 748, 749. And it is laid down by Emerigon, "It is then certain that the insurers never answer for damages and losses which happen directly through the act or fault of the assured himself. It would be, in fact, intolerable that the assured should be indemnified by others for a loss of which he is the author. This rule is grounded upon first principles. It is applied to the contract of insurance by the Guidon and is respected in all our books. *Si casus evenit culpa assecurati, non tenentur assecuratores."* Emer. Ins. (Meredith, Am. Ed.) 290.

It has been held by this court that if the owner himself was not guilty of carelessness, the negligence of his servants will not deprive him of the benefit of his insurance. *Hagar* v. *N. E. M. M. Ins. Co.,* 59 Maine, 460, 463. This was an action upon a time policy under which the loss occurred some months after the policy must have attached. The loss was claimed to have occurred through the negligence of the master in the navigation of the vessel, and *Copeland* v. *Ins. Co.,* 2 Met., 432 is relied upon. It is, however, not necessary in this case to discuss the limitations stated in the case of *Hagar* v. *Ins. Co.,* supra. See *Copeland* v. *Ins. Co.,* supra at pages 443, 444; *Morse* v. *Ins. Co.,* supra.

As to the nature and effect of this obligation it was said *obiter* in *Paddock* v. *Franklin Ins. Co.,* 11 Pick., (1831) 227, 234, "it

would seem to be more consistent with the nature of the contract, the intent of the parties, and the purposes of justice and policy, to hold that after the policy has once attached, the implied warranty should be so construed, as to exempt the underwriter from all loss or damage, which did or might proceed from any cause, thus warranted against; but to hold him still responsible for those losses which by no possibility could be occasioned by peril increased or affected by the breach of such implied warranty."

In *Capen* v. *Washington Ins. Co.*, 12 Cush., (1853) 517, 540, after citing *Paddock* v. *Franklin Ins. Co.*, supra, it is said "The rule there suggested was that it was the duty of the assured, after the policy had once attached, to make his vessel seaworthy, that is, tight, staunch and strong, as far as practicable, at each stage of the voyage; but that such duty was not a technical warranty, the breach of which would wholly terminate the policy; but merely a duty, the failure of which would dicharge the underwriter from any loss arising from such want of repair. But that opinion not being necessary to the decision of that case, was left open to future consideration. The court are now of opinion that this view was correct, and that it is strictly applicable to the present case." See also *Amer. Ins. Co.* v. *Ogden*, 20 Wend., (1838) 287, 294-296.

It may be noted that in England even in voyage policies the implied warranty of seaworthiness is satisfied if the vessel be seaworthy at the commencement of the risk and negligence of the assured is no defence unless so gross as to amount substantially to fraud, or in other words unless the assured knowingly, wilfully and wrongfully committed acts whereby the loss be occasioned.

The plaintiff contends that under his verbal contract with Davidson in the fall of 1908, the latter was not only to make repairs and launch the yacht in the spring but also make her tight, staunch and seaworthy. This undertaking between the plaintiff and Davidson was considered by the District Court of the United States for the District of Maine upon a libel of the latter brought to recover his agreed compensation. That court found that the contract did not obligate Davidson to make the yacht tight, staunch and seaworthy. The Navis, (Hale, J.) 196 Fed., 896. We see no reason upon the evidence in this case to differ from the conclusion reached by the learned Judge of the District Court.

The only other agent employed by plaintiff to do any work upon the yacht prior to her launching in the spring of 1909 was one Lyon. There is no claim on the part of plaintiff that he was ordered to do more than he actually did—connect the keel condenser which he did from the outside of the hull.

The issue therefore is resolved into the inquiry whether the plaintiff did or did not perform his duty "to make his vessel seaworthy, that is tight, staunch and strong as far as practicable." *Capen* v. *Washington Ins. Co.,* supra.

The plaintiff was at the date of the issuance of the policy and since has been a resident of Portland. At the time he ordered that the yacht be launched by Davidson, he intended to go to Sebago lake for a vacation and did go the day before the yacht was launched. It is apparent that he was anxious to get away upon his vacation as early as possible. It is in evidence that in the fall of 1906 he contracted with one Griffin to lay up the same vessel during the winter of 1906-7 and that in the fall of 1906 and the spring of 1907 he personally directed an engineer to prepare the boat for laying up and for launching by making in the spring and fall respectively all the necessary disconnections and connections within. In the fall of 1907 she was not laid up. In the fall of 1908 after the yacht was hauled out at the yard of Davidson, plaintiff directed an engineer to make the necessary disconnection. When the boat was about to be launched in June, 1909, plaintiff informed Davidson that it was not his intention to place the yacht in commission but might allow her to lie at her moorings for an extended period. The fact that the sea cocks were open was readily discerned by inspection within the yacht and the devices for closing them were conveniently at hand.

We conclude that in his anxiety to leave Portland and from the fact that he did not intend to put his yacht in commission as before, he carelessly assumed that the sea cocks would be closed by Davidson contrary to the usual practice; that he was negligent in causing no examination and test of the boat's appliances to be made either before, or at once after, launching and such not being made, to have an anchor watch or caretaker on board until, at least, it was found she was in seaworthy condition. See The Elwin I. Morrison, 153 U. S., 199, 215; The Caledonia, 157 U. S., 124, 134; The South-

wark, 191 U. S., 1, 13, 15-16. *Cleveland & B. Transit Co. v. Ins. Co. of North America,* 115 Fed., 431, 434, 436; II May on Ins., (3rd Ed.) § 411A and note 3; *Hager v. N. E. Mut. Mar. Ins. Co.,* 58 Maine, 460, 463; *The Giulia,* 218 Fed., 744, 748; *The Dunbritton,* 73 Fed., 352, 366; see also *Canton Ins. Office v. Independent Transp. Co.,* 217 Fed., 213, 216-7. See also *Dupeyre v. Western M. & F. Ins. Co.,* 2 Rob. La., 457; 38 Am. Dec., 218. In case of temporary unseaworthiness imputable to the assured, whereby the perils insured against are generally affected, it has been stated, that the risk is suspended and revives on the navigability of the vessel being restored. I Phil. Ins. § 734. See however *McLanahan v. Universal Ins. C.,* 1 Pet. 170, 184; *Quebec Mar. Ins. Co. v. Commercial Bank of Canada,* L. R. 3 P. C., 234, 243-4.

It is unnecessary, however, for the purposes of this case to adopt this rule of Mr. Phillips. The result of such lack of care on the part of the insured is, as we have seen, to relieve the insurers from any liability for a loss which is the consequence of such want of prudence or diligence. See *Copeland v. N. E. Mar. Ins. Co.,* 2 Met., at page 439; see also *Union Ins. Co. v. Smith,* 124, U. S., 405, 427. We must, therefore, regard the actual cause of the loss to have been the unseaworthy condition of the vessel insured, for which the assured is responsible. *Gen. Mut. Ins. Co. v. Sherwood,* 14 How. 351, 366; *The Titania,* 19 Fed., 101, 104.

We do not understand that the plaintiff seeks, in the event that defendant is not found liable on the policy, to recover back the premium paid defendant, either in whole or in part, as suggested may be the case by plaintiff. We need only state that where the policy has once attached, (it is admitted that the policy was in full force and effect at the time the yacht filled) and the risk is entire, there can be no such recovery. *Taylor v. Lowell,* 3 Mass., 331, 343, 344.

*Judgment for defendant.*