## THE "BENEFACTOR."

1. At about ten o'clock in the forenoon, when the weather was clear and fine, a steamship and a schooner were on the ocean.   The schooner, having seen the steamship when six or seven miles away, kept steadily on her course. The steamer saw the schooner when three miles off, and from that time until a collision between them occurred both vessels were sailing on courses which crossed each other, so as to involve risk of collision.   *Held*, that under the circumstances it was the duty of the steamship to keep out of the way of the schooner, and the latter having held her course, the former is liable for the damages occasioned by the collision.
2. The ruling in *The Abbotsford* (98 U. S. 440), that under the act of Feb. 16, 1875 (18 Stat. 315), the finding of facts by the Circuit Court in admiralty cases is conclusive, and that only rulings upon questions of law can be reviewed by bill of exceptions, reaffirmed.

APPEAL from the Circuit Court of the United States for the Eastern District of New York.

This is a libel filed in the District Court of the United States for the Eastern District of New York by William H. Mount and others against the steamship "Benefactor," to recover damages arising from a collision between that vessel and the schooner "Susan Wright."

The District Court found in favor of the libellants, and from its decree the claimants of the "Benefactor" appealed to the Circuit Court.   The latter court found, —

1. That the collision took place a little after ten o'clock in the forenoon of the twenty-sixth day of February, 1875, off Squan Beach, New Jersey, and about three miles distant therefrom.

2. That the weather at and prior to the time of the collision was fine and clear, the wind about west-northwest, and strong;

the steamship was bound from New York to Wilmington, and the schooner bound from Matanzas to New York.

3. That the steamship was observed by those in charge of the schooner when six or seven miles distant therefrom, and from twenty to thirty minutes before the collision. At that time the steamship bore a point or two off the starboard bow of the schooner. The schooner was close-hauled, sailing on a course about north by west, at the rate of about eight miles an hour. The steamship was proceeding on a course about south-southwest at the rate of about ten miles an hour, with her sails set, and the wind free, and making much lee-way.

4. That at this time the courses of the two vessels were such as to cross each other, if continued, and such as to bring the two vessels either together or into close proximity to each other, and the two vessels were proceeding in such directions as to involve risk of collision.

5. That on the windward side of the two vessels, and about three miles distant therefrom, was the New Jersey shore, trending at that point about north by east and south by west, and on the leeward side was the open ocean, without any obstruction to safe navigation. There was nothing to prevent the steamship from seasonably changing her course so as to pass either to windward or to leeward of the schooner and give her a wide berth.

6. That from the time when the steamship was observed, as above stated, she was watched by those in charge of the schooner, and the schooner was kept close-hauled upon her course. The steamship was also kept upon her course, without slacking speed or stopping, until the vessels were only a few lengths apart and a collision was imminent, when the peak of her mainsail was lowered, her engines slowed and stopped, and an effort made to pass to leeward of the schooner, but without success.

7. That after the steamship was within a few lengths of the schooner, and a collision was imminent, the captain of the schooner attempted to avoid the impending collision or lessen its force by porting the helm of the schooner; but, after putting the schooner's wheel only about two spokes to port, he was driven away therefrom by the nearer and dangerous approach

of the steamship, which struck the schooner on her starboard quarter, in consequence of which the schooner sank almost immediately, with her valuable cargo.

8. That the schooner kept her course until the steamship was in close proximity and the collision was imminent, and if there was any change in the schooner's course after that, and before the collision actually took place, it was very slight; had no effect in producing the collision, and was made *in extremis.*

9. That at the time of the collision the schooner was of the value of $17,850, the cargo was of the value of $35,046.58; and both the vessel and cargo, by reason of the collision, became a total loss. The amount of damage sustained by William H. Mount, by reason of loss of and injury to his personal effects by the collision was $1,283.85. The net freight lost by reason of the collision was $1,923.14. The amount of damages sustained by the other libellants, by reason of the loss of and injury to their personal effects by the collision, was $591.15.

The court concluded as matters of law, —

1. Upon the steamship and schooner discovering each other proceeding in such directions as to involve risk of collision, as stated in the foregoing findings of fact, it was the right and duty of the schooner to keep her course, and the duty of the steamship to keep out of the way of the schooner; and the steamship was in fault in failing to perform that duty.

2. It was also the duty of the steamship, under the circumstances stated, to pursue a course which should not needlessly put the schooner in imminent peril; and the steamship was in fault in failing to perform that duty.

3. It was the duty of the steamship, before the time when she did so, to slacken her speed or stop; and the steamship was in fault in failing to perform that duty.

4. If, when a collision had become imminent by reason of the fault of the steamship, any error was committed *in extremis* by those in charge of the schooner, the schooner is not responsible therefor.

5. The steamship had no right, under the circumstances stated, needlessly to place herself in such close proximity to

the schooner that the error of a moment would bring destruction.

6. The collision was occasioned by the fault of the steamship, and the steamship should be condemned therefor.

7. The decree of the District Court was right, and should be affirmed with costs.

The claimants of the " Benefactor " thereupon appealed here.

*Mr. Cornelius Van Santvoord* for the appellants.

The court declined to hear counsel for the appellees.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Upon the facts as found the judgment below was clearly right. The vessels were on the ocean, and there was nothing to interfere with their navigation. The weather was clear and fine, and the time about ten o'clock in the forenoon. The schooner saw the steamer when six or seven miles away, and from that time steadily kept her course until the collision was imminent. While there is no special finding that the steamer saw the schooner, it would have been a gross fault on her part if she did not; and both in the answer and in the requests for finding presented to the court below it is stated that the schooner was seen when three miles off. From that time until the collision the vessels were sailing on courses which crossed each other, so as to involve a risk of collision. Under these circumstances it was the imperative duty of the steamer to keep out of the way, and of the schooner not to embarrass the steamer by any change of course. The schooner, mindful of her duty, did hold her course, but the steamer did not avoid a collision.

The theory of the steamer seems to have been that, as the schooner was bound for New York, she should have steered more to the eastward than she did, and that the steamer had the right to assume she would do so, and act accordingly. This is clearly wrong. The steamer was bound to govern herself by what the schooner actually did, not by what might have been done. When more than six miles from the steamer, and from twenty to thirty minutes before the collision, the schooner was close-hauled, and on a course which she held steadily all the

time.　At that distance from the steamer she had the right to choose her own way of getting to her port of destination, and the steamer could not require her to change it.　As the responsibility of avoiding the collision was on the steamer, it was a fault in her to get so close that a slight change in the course of the schooner, in the midst of what seemed to be imminent peril, would bring the vessels together.　It is clear to us that those on board the steamer were deceived as to the movements of the schooner by the leeway they themselves were making, and that they expected to pass to the windward, when they should have shaped their course to go to the leeward.

The only remaining questions are those which arise on the bill of exceptions.　In *The Abbotsford* (98 U. S. 440), we decided that on an appeal in this class of cases we could only pass on such rulings of the court below as might properly be put into a bill of exceptions on the trial of an action at law, and that the findings of fact sent up with the record were conclusive here.　If there are errors in these findings, they can only be corrected at the proper time and in the proper way by the court below.　We are no longer required to weigh evidence.　On an appeal, the findings have all the effect of the verdict of a jury in actions at law.　This must be accepted as our final conclusion as to the effect of the act of 1875 (18 Stat. 315) in this particular.

The bill of exceptions in this case contains all the evidence, and a request made of the court by the appellant to find the facts in a certain way.　From this request it appears that the only material controversy about the facts was as to whether the schooner negligently changed her course so as to cross the bows of the steamer and bring on the collision.　The court, after considering the evidence, which was to some extent conflicting, found that she did not.　This disposed of the case, and is conclusive on us.　All the exceptions taken have their foundation in this finding, and relate to questions of law which would have arisen if that had been the other way.　As we cannot disturb the finding, we cannot consider the exceptions. It follows that the judgment must be affirmed, and it is consequently

*So ordered.*