## THE ROBERT GRAHAM DUN.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

### No. 101.

COLLISION—STEAM AND SAIL.

International Regulations 1890, art. 12, providing that any vessel may, if necessary in order to attract attention, in addition to the lights which she is required to carry, show a flare-up light, a schooner cannot be held in fault for a collision with a steamer in the night, because of a failure to exhibit such light, where other lights were burning brightly, and no necessity appeared therefor until after the time she was discovered by the steamer.

Appeal from the District Court of the United States for the Eastern District of New York.

For former opinion, see 102 Fed. 652.

Maxwell Evarts, for appellant.

J. Parker Kirlin, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The collision for which the steamship was, by the decree appealed from, held to be solely in fault, took place on the open sea, in fair weather, in a dark but clear night; and, concededly, there were no exculpatory facts or circumstances attending it, if the lights of the schooner were brightly burning and not concealed from the steamship by the set of the schooner's sails. According to the theory of the facts advanced in behalf of the steamship, while she was on a course S. by W. ¾ W., and proceeding at a speed of about 12 knots an hour, the schooner was discovered bearing ahead and somewhat on the starboard bow, first a dim red light, and then her sails, whereupon the steamship's helm was immediately put hard a-starboard, in order, if possible, to avoid collision by crossing the bow of the schooner; but, before she could clear her the vessels collided. According to the theory of the facts advanced by the schooner, while she was on a course N. E. by N., her sails set wing and wing, making a speed of about 4 knots an hour, the steamship's lights were discovered apparently a long dis-

tance away, first the masthead light and then the red light, ahead and bearing about a point and a half on her port bow; that after the red light became visible there was no change in its bearing until the steamship had approached quite near, when she showed both lights and then shut out the red light; that the schooner carried the regulation lights properly set and brightly burning; and that until the time of the collision she had steadfastly maintained her original course. The facts and circumstances of the collision are fully set forth in the opinion of Judge Thomas, who heard the cause in the court below. He found that there was no change of course on the part of the schooner; that she carried proper lights, and they were not obscured from the observation of the steamship; and that the collision was wholly attributable to the conduct of the steamship in attempting to cross the schooner's bows, or in failing to stop and reverse. His findings of fact are justified by the preponderance of the evidence, and must be accepted as correct. Upon the facts which must be treated as established, it is quite unnecessary to determine in what particular the steamship was in fault. It was her duty, the schooner having kept her course and having carried proper lights, to keep out of the way of the schooner; and the collision raises a presumption of fault on her part, and imposes upon her the burden of proving that it arose by inevitable accident. The Carroll, 8 Wall. 302, 19 L. Ed. 392; The Colorado, 91 U. S. 692, 23 L. Ed. 379. This burden was not met, and we are constrained to conclude that, if those in charge of her navigation had used proper diligence to observe the lights of the schooner and locate her bearing, there would have been no collision, as there was nothing to prevent the steamship from taking timely measures to avoid it.

It is contended in behalf of the steamship that the schooner was in fault for not displaying to the steamship a flare-up light, and for that reason, even though the steamship was in fault for the collision, the loss should have been apportioned by the decree between the two vessels. The contention is founded upon article 12 of the international regulations of 1890 for preventing collisions at sea. It provides as follows:

"Every vessel may, if necessary in order to attract attention, in addition to the lights which she is by these rules required to carry, show a flare-up light or use any detonating signals that cannot be mistaken for a distress signal."

This rule is not imperative by its terms, but permissive. Possibly it was enacted to relieve a vessel not being overtaken by another from imputation of fault for displaying a signal which an overtaken vessel is required to display by the provision of article 10. It is the duty of every vessel to exercise any precaution known to the ordinary practice of seamen for preventing a collision or alleviating its consequences, as well as those which are specifically prescribed by the rules. If those in charge of the schooner had known that her lights had not been seen by the steamship, and had apprehended that the latter would not, for that reason, seasonably undertake to perform her obligations, it would have been their duty to adopt any of these precautions which lay within their power. But they had

no reason to apprehend this until the steamship shut out her red light and showed both her lights. Then the schooner's master, who was on deck, went forward and looked at his lights. Having found them showing brightly, he was reassured, and had a right to expect that they would be observed by the steamship, and to assume that she would make the necessary maneuvers to avoid his vessel, until he saw that it was too late for her to do so. If she had made such maneuvers two minutes before the vessels came together, there would not have been a collision, as the vessels, at the rate of speed at which they were approaching one another, would have been about 2,800 feet apart. If there had been time for him to have procured and exhibited a flashlight after he ought to have assumed that the steamship would not perform her duty and avoid his vessel, it is not surprising that in the excitement and confusion of the moment he did not think of doing so, and the omission to do so would have been excusable as an error in extremis. The argument made in behalf of the steamship, that he was bound to apprehend danger throughout the 15 minutes preceding the collision, does not commend itself to us as having any reasonable basis.

We conclude that the decree below was correct, and that it should be affirmed, with interest and costs.