### ÆTNA INS. CO. et al. v. SACRAMENTO-STOCKTON S. S. CO. *

(Circuit Court of Appeals, Ninth Circuit. May 6, 1921.)

No. 3601.

1. **Insurance ⊙146(1)—All portions of policy to be harmonized and given effect.**
   All parts of an insurance policy must, if possible, be harmonized and given effect.

2. **Insurance ⊙150—Effect of rider on printed clause stated.**
   Unless the rider on an insurance policy is irreconcilable with the printed clause, such clause must stand; but, if it is inconsistent and irreconcilable, the rider will control.

3. **Insurance ⊙150—Undeleted portions of policy held in force, unless irreconcilable with rider.**
   Where an insurer, attaching a rider to a policy, deleted portions of the body of the policy and marked them "void," it thereby expressed its intention that the undeleted portions should remain in force and constitute portions of its obligation, unless the rider was irreconcilable with them.

4. **Insurance ⊙150—Provision as to insurance against perils of the sea held not abrogated by rider.**
   A rider on a policy of marine insurance, providing that "this policy is to cover only as follows: Loss or damage caused by fire in accordance with * * * the regular California standard form of fire policy. * * *

Loss or damage * * * 'through collision * * *"—*held* not to abrogate provisions in the body of the policy which included perils of the sea in the risks insured against.

**5. Insurance ☞146(3)—Policy to be construed against company.**

An insurance policy is the language of the company, and it is both reasonable and just that its own words should be construed most strongly against it.

**6. Customs and usages ☞17—General understanding in particular business as to construction of unambiguous contract properly excluded.**

Where an insurance contract was neither ambiguous nor obscure, it spoke for itself, and evidence of the general understanding among those engaged in the marine insurance business and the shipping business that a rider superseded the terms of the policy and alone defined the risk was properly excluded.

**7. Evidence ☞441(13)—Intention of parties as to risks insured against cannot be proved.**

Where a provision in the body of marine insurance policies bearing riders included perils of the sea in the risks insured against, evidence that the agents of the insured and insurer agreed at the time of the application for insurance that the only risks intended to be insured against were fire and collision, specified in the rider, was properly excluded, since, if the contract failed to express the intention of the parties, the remedy was by suit to reform.

**8. Insurance ☞273—Warranty of seaworthiness not implied in time policy under English law.**

By the English law and practice, no warranty that a vessel is seaworthy will be implied in a time policy of marine insurance.

**9. Insurance ☞403—"Perils of the sea" need not be catastrophic under English law.**

By the English law and practice, a "peril of the sea." within the meaning of a marine insurance policy, need not be extraordinary, in the sense of being catastrophic or necessarily the result of uncommon causes; and severe storms, rough seas, and even fogs may be comprised in the perils of the sea.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

Hunt, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the Sacramento-Stockton Steamship Company against the Ætna Insurance Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

The defendant in error brought an action against three insurance companies to recover on three several policies, whereby they insured the steamer Monarch against the perils enumerated therein, and alleged that on about April 15, 1915, the steamer was wrecked and totally lost by perils insured against, and that on June 3, 1915, the plaintiff gave notice of abandonment to each of said insurance companies, to which each replied, refusing to accept abandonment of the plaintiff's interest in the steamer, and stating that their policies were "rescinded and voided by the unseaworthiness of the said vessel, which caused her loss." The complaint further alleged that by the terms of each of said policies it was provided that claims, including claim for total loss, were to be adjusted according to English law and practice, and that it is the English law and practice that in a time policy of insurance there is no implied warranty that the ship shall be seaworthy at any stage of

the adventure. The defendants in their answer denied that the vessel was lost by any perils in the policies insured against, and denied that under the terms of the policies the claims were to be adjusted under the English law, and they alleged that under the English law, where with the privity of the assured the ship is sent to sea in an unseaworthy condition, the insurer is not liable for any loss attributable to unseaworthiness. They alleged that the vessel was unseaworthy with the privity of the plaintiff, that by reason of said unseaworthiness the vessel was wrecked and lost, and that on June 3 they rescinded said policies because of the unseaworthiness of the vessel, and notified the plaintiff of such rescission. At the conclusion of the evidence the court instructed the jury to return a verdict for the plaintiff.

McCutchen, Willard, Mannon & Greene, Edward J. McCutchen, and Farnham P. Griffiths, all of San Francisco, Cal., for plaintiffs in error.

Nathan H. Frank and Irving H. Frank, both of San Francisco, Cal., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVER-TON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). One of the questions involved on the writ of error is whether or not the vessel was lost through a peril covered by the policies. The defendants contend that each policy limited the perils insured against to fire and collision, as expressed in the rider which was attached to each. The riders were printed forms, and are identical, but there is some difference in the marginal indorsements on the policies and in the portions of the bodies of the policies which were deleted. The riders begin thus:

"This policy is to cover only as follows: Loss or damage caused by fire in accordance with the terms and conditions of the regular California standard form of fire policy as issued by the Ætna Insurance Company, of Hartford, Conn."

"Loss or damage done to another ship or vessel through collision in accordance with the terms and conditions of the following collision clause."

Then follows a printed collision clause, and special provisions therein limiting liability to damage in the amount of $750 or more. On the margin of the Ætna and the Union Marine policies, impressed by a rubber stamp, are the words:

"It is agreed that clauses on slip attached hereto form part of this policy."

Also the words:

"Subject to limitations of trade as specified in slip attached to this policy."

At the foot of each rider is the following:

"The foregoing clauses are to be regarded as substituted for the terms of the policy to which they are attached, the latter being hereby waived."

In the body of the Ætna policy a collision clause differing in terms from that contained in the rider was deleted, marked:

"Void. J. A. W."

Other portions of the body of the policy, which were deleted and similarly marked, were a provision in regard to general average and a provision excluding liability for any sum which the assured might

become liable to pay for removal of obstructions under statutory powers for injury to harbors consequent on collision, or for loss of life or personal injury resulting therefrom. There remained undeleted a provision concerning the perils which the insurers were to assume, including perils of the sea. In the other two policies there are no deletions. The Hartford Insurance Company's policy does not contain the marginal clauses of the other two policies, but in the body of the policy, and in that portion which contains insurance against the perils of the sea, the insurer has filled one blank by writing therein the figure "3," and has drawn a line through another blank, after the word "return" indicating the adoption of that clause of the body of the policy.

[1-3] It is well settled that all parts of an insurance policy must, if possible, be harmonized and given effect. Unless the rider is irreconcilable with the printed clause, such clause must stand. Merchants' Ins. Co. v. Allen, 121 U. S. 69, 7 Sup. Ct. 821, 30 L. Ed. 858. But if it is inconsistent and irreconcilable, the rider will control. Gunther v. Liverpool, L. & G. Ins. Co. (C. C.) 34 Fed. 501. In the Ætna Company's policy it distinctly appears that the company took pains to delete and mark with initials certain portions of the body of the policy. It thereby expressed its intention that the undeleted portions should remain in force and constitute portions of its obligation, unless the rider is irreconcilable with them.

[4, 5] It is contended that the rider was intended to express all the risk incurred by the insurer. We do not so construe it. It is true it begins with the words "This policy is to cover only as follows:" but we think the words mean no more than that the insurer intended to substitute the two provisions contained in the rider for corresponding provisions in the body of the policy, and that as to those two provisions the policy was "to cover only" as expressed in the rider. One of the substituted provisions is the collision clause, which differs in form from and takes the place of the collision clause which was deleted from the body of the Ætna policy. The provision in the riders as to loss or damage caused by fire appears to have been inserted for the purpose of limiting such loss to the "terms and conditions of the regular California standard form of fire policy as issued by the Ætna Insurance Company." In the body of the policy fire is simply mentioned as one of the risks insured against.

The same construction, we think, should be given to the other two policies, although there are no deletions therein. They each contain in the body of the policy a fire risk and a collision clause. It is the language of the insurance company that we are called upon to construe, "and it is both reasonable and just that its own words should be construed most strongly against itself." National Bank v. Insurance Co., 95 U. S. 673, 679, 24 L. Ed. 563; Thompson v. Phenix Ins. Co., 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408. Light is thrown upon the defendant's own understanding of the contract by the fact that, when notified of the abandonment of the vessel, they made no claim that loss occurred from a cause not insured against, but wrote to the plaintiff that their policies "were rescinded and voided by the unseaworthiness of said vessel which caused her loss."

[6, 7] Error is assigned to the exclusion of evidence offered to show the general understanding among those engaged in marine insurance business and in the shipping business "in San Francisco and thereabouts" that a rider, such as is attached to the policy in suit, supersedes the terms of the policy and alone defines the risk. If the offer had been to prove that a term or expression used in a contract of insurance had received a particular construction by the general consent of the mercantile world, a different question would be presented; but the offer was to prove a general understanding of the meaning of an insurance contract in San Francisco and thereabouts. The evidence was clearly incompetent. The contract speaks for itself. It is neither ambiguous nor obscure.

"Custom or usage which contradicts the express terms of a policy of insurance is not controlling." 12 Cyc. 1093, and cases there cited; 17 C. J. 506; Arnould, § 56.

Nor was it error to exclude testimony offered to show that, in applying for insurance, the plaintiff's agent agreed with the agent of the Union Marine Insurance Company that the only risks intended to be insured against were fire and collision. If the contract failed to express the intention of the contracting parties, the remedy was by a suit to reform the policy. Insurance Co. v. Mowry, 96 U. S. 544, 547, 24 L. Ed. 674.

The defendants rely on New York P. R. S. S. Co. v. Ætna Ins. Co. (D. C.) 192 Fed. 212, where Judge Hand held that the rider superseded the policy. In that case there was a printed rider pasted on the face of the policy immediately below the first general statement of the name of the steamship, the amount of the risk, and the period for which it ran, and it contained "all the provisions of the usual English marine policy." At the bottom were the words:

"The terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived."

The decision was affirmed in New York & P. R. S. S. Co. v. Ætna Ins. Co., 204 Fed. 255, 122 C. C. A. 523. The difference between that case and this is that in that case the rider contained all the provisions of the usual English marine policy, was dated and signed by the agent of the insurance company, and was attached in such a way as to indicate that it was substituted for everything in the policy except the name of the steamship, the amount of the risk, and the period thereof. In the present case the rider affected only two provisions of the policy, and the way in which each insurance company dealt with the body of the policy indicated to what extent it was to be affected by the rider, and to what extent it was intended to remain in force.

The defendants in their answer admitted that the vessel was wrecked, but they alleged that at the time of the wreck the vessel was unseaworthy with the privity of the plaintiff. A witness for the defendants testified that after leaving port, on her voyage from San Francisco to Sacramento, the vessel encountered stormy weather, with a high wind; that it was a "bad storm," and that an hour later 8 or 10 seams on the starboard side opened for a distance of 20 or 30 feet,

and water poured into the hold; that half an hour later the vessel reached her landing, at which time the water in the hold reached to the deck, and that 20 minutes later she turned over on her side. The policies included insurance against perils of the sea and all other perils, losses, and misfortunes that have or shall come to the hurt, detriment, or damage of the said ship. The defendants offered to prove by the second mate that in his opinion the filling and sinking of the vessel was caused by unseaworthiness. The exclusion of the proffered testimony is assigned as error. And in that connection the defendants contend that the proof was insufficient to show that the vessel was lost by the perils of the sea.

[8] The policies were time policies, and the vessel had been operating under them for a period of nine months. Each policy provided:

"Claims if any, including claim for constructive total loss to be adjusted according to the English law and practice."

By English law and practice the rule is conclusively established that in a time policy a warranty that the vessel is seaworthy will under no circumstances be implied. Arnould on Marine Insurance, § 697. Leading cases so holding are Gibson v. Small, 4 H. L. C. 353, and Dudgeon v. Pembroke, 2 App. Cas. 284. If we assume that the defense pleaded in the answer, that at the time of the wreck the vessel was unseaworthy "with the privity of the plaintiff," and that her unseaworthiness occasioned her loss, is equivalent to the plea which in Thompson v. Hopper, 6 El. & Bl. 937, and Dudgeon v. Pembroke, was sustained as an exception to the rule, a plea alleging that the shipowner himself knowingly and willfully sent the ship to sea in an unseaworthy state and that she was lost in consequence, the fact remains that the defendants here made no offer to prove such knowledge on the part of the plaintiff.

[9] As to the contention that the proof was insufficient to show that the loss occurred through a peril insured against, it is sufficient to point to the rulings of the English courts as to what are the perils of the sea insured against in such a policy. Said Lord Herschell, in The Xantho, 12 App. Cas. 509:

"It is well settled that it is not every loss or damage of which the sea is the immediate cause that is covered by these words. They do not protect, for example, against that natural and inevitable action of the winds and waves which results in what may be described as wear and tear. There must be some casualty, something which could not be foreseen as one of the necessary incidents of the adventure. The purpose of the policy is to secure an indemnity against accidents which may happen, not against the events which must happen. It was contended that those losses only were losses by perils of the sea which were occasioned by extraordinary violence of the winds or waves, I think that is too narrow a construction of the words, and it is certainly not supported by the authorities or by common understanding."

In Dudgeon v. Pembroke, Lord Penzance said:

"The real question intended to be raised, therefore, is whether a vessel not strong enough to resist the perils of the sea (in another word, unseaworthy) can be properly said to be 'lost by perils of the sea,' when it is clear that by the force of the winds and waves it went ashore, and finally broke up and went to pieces. The question, therefore, is one of law, and not of fact, and

the learned judge was quite justified in entering the verdict as he did without asking the jury any further question as to the loss. * * * It was said by one of the learned judges in the Exchequer Chamber that 'the unseaworthiness of the ship at the commencement of the voyage, which really causes the loss, is a fact, the consequences of which are imputable to the assured, and were to be borne by him, and not the underwriters.' But the question, as it seems to me, is not what losses ought in the abstract to be borne by the assured as being 'imputable' to him or his agents, on the one hand, or by the underwriters as being caused by the elements, on the other hand, but what losses they have mutually agreed should be borne by the underwriters in return for the premium they have received. These losses are in the contract of insurance, amongst others, declared to be all 'losses by perils of the sea.' A long course of decisions in the courts of this country has established that 'causa proxima et non remota spectatur' is the maxim by which these contracts of insurance are to be construed, and that any loss caused immediately by the perils of the sea is within the policy, though it would not have occurred but for the concurrent action of some other cause which is not within it."

In Ajum Goolam Hossen v. Union Mar. Ins. Co., 17 T. L. R. 367, the court held that the assured could recover, although in that case the loss did not appear to be traceable to any violence of wind or wave, and it is the settled doctrine of the English courts that in case of foundering at sea, where there is no proof of the cause thereof, it will be presumed that the loss occurred through the peril of the sea. Arnould, § 813. Rule 7 of the First Schedule of the English Marine Insurance Act of 1906 provides:

"The term 'perils of the seas' refers only to fortuitous accidents or casualties of the seas. It does not involve the ordinary action of the winds and waves."

We reach the conclusion that by the English law and practice a peril of the sea need not be extraordinary, in the sense of being catastrophic or necessarily the result of uncommon causes, and that severe storms, rough seas, and even fogs may be comprised in the perils of the seas.

The judgment is affirmed.

HUNT, Circuit Judge, dissents, on the ground that the question whether the Monarch was lost by a peril of the sea was one of fact, and should have been submitted to the jury.