## THE CHEROKEE.

### THE BRIGHT.

### NORTH & SOUTH SHIPPING CO. et al. v. CHEROKEE–SEMINOLE S. S. CORPORATION.

### No. 41.

Circuit Court of Appeals, Second Circuit.
Nov. 17, 1930.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and A. Howard Neely, both of New

York City, of counsel), for appellant Cherokee-Seminole S. S. Corporation.

Burnham, Bingham, Gould & Murphy, of Boston, Mass. (Albert T. Gould, of Boston, Mass., of counsel), for appellant Spring Coal Co.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On January 19, 1927, after 8 p. m., in foggy weather and a light breeze, the steamship Cherokee collided with the schooner Bright one and a half miles off Barnagat Gas buoy in the Atlantic Ocean. The Bright was bound from Norfolk, Va., to Portland, Me., on a course N. E. ½ E. The Cherokee, loaded with cargo and passengers, left New York, and was bound for Miami, Fla. At about 6:15 p. m. the Bright encountered fog and reduced her sail by taking in the top sails as well as outer jib and spanker, and changed her course one point to the eastward. She had running lights, as required for her type, and a mechanical fog horn placed on her forecastle head. It was operated by her seaman. Three blasts of her horn at intervals of one minute were proper signals under the International Rules (article 15 (c). The evidence supports the Bright's claim that such signals were given. The range lights of the Cherokee were first sighted by the Bright's crew on her port bow between three and five minutes before the collision. When sighted, it was the duty of the sailing vessel to keep her course and speed (The Benefactor, 102 U. S. 214, 26 L. Ed. 157; International Rules, art. 21) and of the Cherokee to keep away from this sailing vessel (International Rules, art. 20).

The first sight of the steamer's lights gave the appearance of her crossing the bow of the Bright, but, as the steamer came nearer, though the Bright kept her course and speed, the lights of the steamer closed in and opened to the left, indicating she would go astern of the Bright. But, instead, she hauled around on her starboard wheel and came across toward the bow, tearing her headgear and staving in the bow. When the master of the schooner saw the collision could not be avoided, he ordered the wheel put hard down so as to ease the shock. The schooner's speed was four knots and the steamer's twelve knots. The Cherokee maintained a speed of twelve knots until a white light was sighted a little off on the starboard bow. The Cherokee cannot successfully maintain that she be excused because the Bright was not blowing fog signals frequently enough. Excessive speed in a fog, a violation of the sight rule, has frequently caused us to impose liability. The Watuppa, 283 F. 8 (C. C. A. 2); The Walter Franks, 299 F. 319 (C. C. A. 2); The Esperanza, 16 F.(2d) 945 (C. C. A. 2). It is true there is a dispute as to the distance of visibility through this fog. Only two witnesses on the Cherokee were called, the master and chief officer, who said that visibility was less than 400 feet, while the crew of the Bright stated they could see a half a mile away. But, in any case, it is clear that the Cherokee was navigating at excessive speed. She was not proceeding at such speed that she could stop within the distance that she could see ahead, on her story, and this was in violation of the rule. The Esperanza, supra; The Sagamore, 247 F. 743 (C. C. A. 1); Burke v. United States, 15 F.(2d) 573 (D. C. Dist. Ore.); The Umbria, 166 U. S. 404, 409, 17 S. Ct. 610, 41 L. Ed. 1053. In the track of vessels bound north and south, she was burdened with the expectancy of meeting passing craft. The Martello, 153 U. S. 64, 70, 14 S. Ct. 723, 38 L. Ed. 637. Moreover, in the presence of danger, the Cherokee increased her speed from twelve knots to full speed, sixteen knots, and threw her helm to starboard in order to avoid the light which her master saw on the starboard bow. He was unable to determine what the light was and in what direction the vessel carrying the light was proceeding. The duty to stop in the presence of danger such as appeared has been repeatedly recognized and enforced. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126; The Cushing, 292 F. 560, 565 (C. C. A. 2). And it appears that, if the Cherokee had stopped or altered her course to starboard, the collision might have been avoided. The Buenos Aires, 5 F.(2d) 425 (C. C. A. 2); The Martello, 153 U. S. 64, 14 S. Ct. 723, 38 L. Ed. 637. There is testimony that the Cherokee had a lookout stationed forward. He did not testify. In the absence of a report, the two witnesses who did testify for the Cherokee were unable to say whether he was there at the time the Bright was sighted. Violation of the duty to maintain a lookout particularly in the foggy weather, is regarded as a fault bringing about consequential damages. The Prinz Oskar, 219 F. 483, 488 (C. C. A. 3); The Stifinder (C. C. A.) 275 F. 271. The failure to see what might have been seen or to hear is strong evidence of a careless lookout. Brigham v. Luckenbach, 140 F. 322 (D. C. Dist. Me.). It is apparent that, when the light of the

Bright was visible on the Cherokee's starboard bow, the Bright was much further away than one ship's length, perhaps a half mile, and there was time to have avoided collision if the Cherokee was prudently navigated.

■ The Cherokee's faults are sufficient to account for the disaster, and we should not impose contribution upon the Bright merely because a doubt may be raised as to her navigation. The City of New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84; The Persian, 224 F. 441 (C. C. A. 2). We are not warranted in invoking a very scrupulous search for the possible faults of the Bright. The Victory, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519; The Umbria, 166 U. S. 404, 17 S. Ct. 610, 41 L. Ed. 1053. The captain, mate, boatswain, and other members of the crew were on deck in a position to hear, and they were aware of the Cherokee's presence before the collision. They heard the Bright's fog signals at intervals of one minute in compliance with the rule. The District Judge was warranted in accepting their testimony, although opposed by the testimony of the master and chief officer of the Cherokee. When the master of the Cherokee heard the fog horn, he noted that it carried a considerable distance. His failure to hear before, indicated inattention to signals. Whatever may have been the reason for the failure to hear, we are satisfied, on this record, that the fog horn signals were blown.

■ Nor was the Bright blameworthy with respect to its lookout. The charge of fault was that the lookout was stationed some 20 feet from the stem and, because he had the duty of sounding the horn as well, there was fault which contributed to bring about the collision in not keeping a good lookout. But those on the Bright saw the Cherokee a sufficient distance off and did what they could to avoid the collision. They had previously reduced their speed, and when the Cherokee was sighted, they kept their course and speed as reduced.

■ Before the collision, the captain focused a flash-light against the sails to assist the steamer to clear the stern. This was done because it was thought the Cherokee would pass safely to the stern. But she made a sudden change of her course which made the collision inevitable. International Regulations, art. 12, provides that a vessel may, if necessary, in order to attract attention, in addition to the lights which she is required to carry, show a flare-up light. But this schooner cannot be held at fault for this collision because of the failure to exhibit such flare-up light, where other lights were burning brightly and no necessity appeared therefor until after the time she was discovered by the steamer. The Lafayette, 269 F. 917 (C. C. A. 2); The Robert Graham Dun, 107 F. 994 (C. C. A. 2). Moreover, it appears that, if the Cherokee had observed a flash ahead, the assumption might well be that the sailing vessel was proceeding in the same direction as the steamer, and this might have enhanced the danger of collision, because the steamer might have been encouraged to keep going to avoid the schooner by going around her on her port side. The master of the Bright testified that showing the flash-light on the schooner's sail was to attract the steamer's attention to the schooner, hoping thus to assist the Cherokee in passing astern so that her officers could see exactly the position of the schooner's stern. This act of assistance has been approved. The Prinz Oskar, 219 F. 483 (C. C. A. 3). The result below was fully justified by this record, and the decree must be affirmed.

Decree affirmed.