## McPHERRIN v. HARTFORD FIRE INS. CO. et al.

### Civil Action No. 4205–L.

District Court, N. D. California, N. D.

Feb. 13, 1942.

See, also, D.C., 1 F.R.D. 88.

Rich & Weis, of Marysville, Cal., for plaintiff.

McKinney, Folonie & Grear, of Chicago, Ill., and Fontaine Johnson, of Sacramento, Cal., for defendant Phoenix Ins. Co.

Myers & Snerly, of Chicago, Ill., and Van Dyke & Harris, of Sacramento, Cal., for defendant Hartford Fire Ins. Co.

NORCROSS, District Judge.

This case was tried before Honorable Harold Louderback, a Judge of this District, lately deceased, and submitted upon briefs subsequent to the trial. By stipulation of counsel the case has been resubmitted upon the briefs heretofore filed.

This is an action for declaratory relief, 28 U.S.C.A. § 400, against defendants, praying for a finding and a declaration by the court of the plaintiff's rights, and the liabilities of the defendants, each of whom disclaims liability and each of whom contends that the liability is that of the other. The controlling facts are not in controversy.

On June 29, 1939, the plaintiff, E. E. Mc-Pherrin, shipped four carloads of lambs over the Western Pacific Railroad Company, and the Union Pacific Railroad Company. The shipment originated at Portola, California, and was consigned to William R. Smith & Son, with destination, Chicago, Illinois. The consignees were livestock brokers with offices in Chicago, Salt Lake, and Omaha.

On July 3, 1939, at about 8:15 P.M., the lambs were unloaded from the railroad cars, at Valley, Nebraska, for "feed and rest," as was provided for by law and the written contract of shipment. The lambs were placed in feeding pens of the Valley Stockyards & Grain Co., which Company maintained a feeding in transit yard. The

lambs remained at the Valley stockyards until about 9:15 P. M. of July 4th, when a fire occurred therein destroying all the lambs. Following the unloading of the said lambs at Valley, Nebraska, they were inspected by the consignee who later changed their destination from Chicago to Omaha, Nebraska. The delay occasioned by the inspection and change in destination was the primary cause of the loss of the lambs by the fire which subsequently occurred in the stockyards.

The Hartford Fire Insurance Company had issued a livestock transit policy of insurance to the plaintiff, which was in effect when the lambs were destroyed. Whether or not this policy covered the conditions under which the loss occurred, is one of the major questions in the case.

The Phoenix Insurance Company had issued an insurance policy to the Valley Stockyards & Grain Company, insuring them against loss of livestock from fire or lightning, occurring while the livestock were under the control of the Valley Stockyards and Grain Company at its stockyard at Valley, Nebraska. The policy covered the interests of shippers while their stock were on the premises. This policy was in effect at the time of the loss of plaintiff's lambs. Whether or not plaintiff can recover in full, or in part, on this policy, is the second major issue of the case.

Each Insurance Company denies liability for the loss, and each Insurance Company contends that the liability is that of the other. The plaintiff brought this action for declaratory judgment, joining both Insurance Companies as defendants. By stipulation, the value of said lambs, at the time and place of their destruction, was $8,771.

█ In the brief filed by the defendant Phoenix Insurance Company the question of jurisdiction is again raised. This question was raised by the same party and determined adversely to its contention prior to the filing of the final briefs. The Court continues in the view that such question is without merit. Maryland Casualty Co. v. Hubbard, D.C., 22 F.Supp. 697.

The Hartford Fire Insurance Company policy, covering insurance against loss from the place of shipment to final destination, contains a provision reading: "This insurance shall cover and protect livestock while stopped and detained in transit at feeding stations to comply with the law, but not when or while such stoppage and/or detention are because of and pursuant to the order or direction of the assured or his authorized representative for any other purpose."

A rider attached to the Hartford policy contains a provision including the following statement: "The liability for loss on sheep or lambs occurring at feeding in transit yards where same are unloaded in compliance with law is limited to the period of twelve (12) hours after the time of arrival at such yards."

The Phoenix Insurance Company policy contains the following provisions:

"This insurance is intended to cover the interest of the shippers, also the interest of the purchasers, and the liability of the Valley Stockyards & Grain Co., Inc. while the stock remains on the premises described herein.

* * *

"It is specifically understood and agreed that if there be any specific insurance on livestock, as above described, that this policy shall apply only after said specific insurance is exhausted."

The policies of both the Hartford and Phoenix Companies are general in character and not limited to any particular shipment or shipments of livestock. It is the contention of the Phoenix Company that the Hartford policy constituted a "specific insurance" of the lambs, concerning which, liability for loss is the ultimate question of law in this case. If there was not such liability upon the part of the Hartford Company then such liability was that of the Phoenix Company.

The Hartford policy in question, inclusive of the rider attached thereto, is of date April 17, 1936. The main portion of the policy insures "against all loss or damage as herein specified, but not otherwise, to all livestock, namely, cattle, calves, sheep, goats and hogs, * * * while in transit by any common carrier from points of shipment * * * to the Union Stockyards at South San Francisco, California * * *. The liability of this company * * * shall so continue until the arrival * * * at the destination named above * * *." Following the date and preceding the signatures thereto appears the statement: "This policy shall not be valid until countersigned by the duly authorized representative of the company at 150 San Francisco, Cal."

█ Some question is raised by the defendant's briefs respecting the considera-

tion, if any, which may be given the rider or riders, as the case may be, attached to the main Hartford policy. It is well settled by a number of decisions by the Circuit Court of Appeals of this Circuit that such riders not only may be considered but that, in case of conflict with provisions in the main contract, they, as well as written matter inserted, are controlling. Hagan v. Scottish Union & Nat. Ins. Co., 186 U.S. 423, 22 S.Ct. 862, 46 L.Ed. 1229; Rice Oil Co. v. Atlas Assur. Co., 9 Cir., 102 F.2d 561; North River Ins. Co. v. Clark, 9 Cir., 80 F.2d 202; Independence Indemnity Co. v. Jones, 9 Cir., 64 F.2d 312; Aetna Ins. Co. v. Sacramento-Stockton S. S. Co., 9 Cir., 273 F. 55; Fireman's Fund Ins. Co. v. Globe Navigation Co., 9 Cir., 236 F. 618. See, also, 35 Federal Digest, Insurance, ⟐ 149, 150, pp. 241-244.

If it were not for one of the provisions in the rider or riders so attached, the main Hartford policy would not cover transit shipments to six other stockyard designations in the Central States, including Chicago, Omaha, Kansas City and Sioux City. This rider also contains the typed in statement: "Special low rates being granted on lamb shipments to these stockyards."

It appears from a photostatic copy of the original Hartford policy in evidence that the rider or riders in question are attached to each other or that both are set forth on the same piece of paper which is headed: "Tariff of Minimum Premiums for Insuring Livestock in Transit under Hartford Complete Livestock Transit Policy." The additional provisions in what may be an additional rider contains no separate heading but refers not only to tariff rates but to deliveries to the Eastern stockyards at places above referred to. It concludes with the printed statement as follows:

"It is understood and agreed that the terms and conditions of this form are to be regarded as substituted for those of Policy No. S.F.—1927 to which said form is attached, in so far as the terms and conditions of said policy are inconsistent with the terms and conditions of this form; the terms and conditions of said policy otherwise to remain in full force and effect.

"To attach to and form part of Policy S. F.—1927 issued by the Hartford Fire Insurance Company at its office in South San Francisco, Calif., on the 17th of April 1936."

To the contention of the Hartford Company that it is exempt from liability under both of the provisions of its policy, first above quoted, and, in effect, that if either is determined to be applicable, it would be unnecessary to consider the other, the Phoenix Company contends that both are inapplicable. With respect to the paragraph in question appearing in the main policy the Phoenix Company's brief is largely devoted to a citation of authorities severely criticizing the use of the combined words and symbol "and/or" and it is contended that, if any consideration is to be given to the paragraph, the word "and" alone should be read into it and the word "or" entirely excluded. So read it could have no application to the facts of this case for it is apparent and conceded that the stoppage was made by the Union Pacific Railroad Company which was required by law to make such a stoppage of cars containing livestock in transit at least every thirty-six hours for unloading of the same for feed and rest for a minimum time of five hours. It does not follow, however, that a stoppage for unloading and detention may not be for a reason in no way connected with the legal requirement for such rest and feed or that if stopped for such purpose another reason may not exist or develop for a much longer detention than would otherwise be made.

■ Whatever criticism may be justified for the use of the words and symbol "and/or" they are continued in use and Courts will have to deal with them according to the facts appearing in any particular case. In the present case it is not apparent that they could be confusing or misleading even if there were no other facts in the case than the policy itself. Here there is to be dealt with an insurance policy the rates for which presumably are governed by the risks assumed. The risk incurred to "livestock while stopped and detained in transit at feeding stations to comply with the law," is clearly recognized. It is equally clear that if the stoppage or detention is made for any other reason "by order or direction of the assured or his authorized representative" no liability is assumed for injury occurring during such time. There is also a reason for such a provision in a policy like that of the Hartford Company. The possible occurrence of actual injury to livestock is continuous from the time of beginning of loading at the place of shipment to delivery at the final destination. In view of facts, such as appear in this case, where, as a result of the growth of the

livestock industry through the years, brokerage firms have become established, covering the more populous centers, whose business it is, upon a commission basis, to effect sales at the highest net price then apparent among the various available major markets. That situation accounts for the fact that in this case the brokerage firm was made the consignee with power conferred to make an inspection and to divert the consignment to another place for final delivery. Such a change would necessarily frequently occasion some additional delay either at some regular stoppage feed yard according to the original bill of lading or a stoppage at some other point for transfer to some other line of railroad. Where such situations may arise at some future time it may not be said to be unreasonable for an insurance company to make a provision for exemption from liability for injuries occurring during such a stoppage or detention, or that the assured would not so understand and assent thereto, especially as the rates are presumably governed by the risks assumed.

With respect to the provision in the rider directly attached to the main policy reading: "Sheep Shipments—* * * The liability for loss of sheep or lambs occurring at feeding-in-transit yards where same are unloaded in compliance with law is limited to the period of twelve (12) hours after the time of arrival at such yards"—it is the contention upon the part of the Phoenix Company that such provision should be disregarded because of the heading of the rider printed in comparatively large type reading: "Tariff of Minimum Premiums for Insuring Livestock in Transit," for the reason that the provision in question had no relation thereto. This contention is without merit. It relates to a condition which may well be taken into consideration in determining a schedule of "tariff of minimum premiums." The concluding printed portion of the rider reads: "This tariff and appended conditions are to be attached to and form a part of Policy No. S.F.—1927 Hartford Fire Insurance Company."

It is the conclusion of the Court that plaintiff is entitled to recover in full from the defendant, Phoenix Insurance Company, but that neither the plaintiff, nor the defendant, Phoenix Insurance Company, is entitled to any recovery from the defendant, Hartford Fire Insurance Company. Judgment should be entered accordingly. It is so ordered.